[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 975 
¶ 1. Leslie W. Smith was indicted on June 20, 2002, on three counts of sexual battery. After trial, Smith was found guilty on all three counts and sentenced to thirty years for each count, with ten years suspended on each count, to run consecutively in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved, he assigns the following issues for review.
 I. Whether the trial court erred by refusing to dismiss Smith's indictment.
 II. Whether Smith was denied effective assistance of counsel.
 III. Whether the trial court erred in allowing improper hearsay testimony *Page 976 
to be admitted into evidence under the tender years exception.
 IV. Whether the trial court erred in denying Smith's challenges for cause during voir dire.
 V. Whether the trial court erred by denying Smith's motions based on the sufficiency of the evidence.
 VI. Whether the trial court erred by not declaring a mistrial based upon a complete deterioration of the attorney/client relationship between Smith and his attorney.
 VII. Whether jury instructions C-7, C-8, and C-9 were improper statements of the law and based on a fatally flawed indictment.
Finding no error, we affirm.
 FACTS AND PROCEDURAL HISTORY[1] ¶ 2. This case arose from complaints by C.C. that she was sexually molested by Smith. At the time the alleged offenses were committed, Smith was dating C.C.'s mother and living with the family. Subsequently, Smith was indicted on three counts of sexual battery by a Pontotoc County grand jury.
 ¶ 3. Count I of the indictment stated that between December 1, 2001, and December 9, 2001, Smith:
 did willfully, unlawfully, and feloniously commit sexual battery upon C.C., a human being, by penetrating the victim's anus/rectum with his penis, and at the time of the said offense, Defendant was above the age of 18 years, having a date of birth of March 21, 1975, and the victim was under the age of 16 years, having a date of birth of November 11, 1992.
Count II of the indictment stated that between July 1, 2000, and November 30, 2001, Smith:
 did willfully, unlawfully, and feloniously commit a sexual battery upon C.C., a human being by penetrating the victim's mouth with his penis, and at the time of the said offense, Defendant was above the age of 18 years, having a date of birth of March 21, 1975, and the victim was under the age of 16 years, having a birth date of November 11, 1992.
Count III of the indictment stated that between July 1, 2000, and November 30, 2001, Smith:
 did willfully, unlawfully, and feloniously commit a sexual battery upon C.C., a human being by performing cunnilingus on the victim, and at the time of the said offense, Defendant was above the age of 18 years, having a date of birth of March 21, 1975, and the victim was under the age of 16 years, having a birth date of November 11, 1992.
 ¶ 4. Prior to trial, Smith made a motion for a suppression hearing to determine whether certain hearsay testimony was admissible. At issue was the testimony of several of the State's witnesses who were expected to testify as to what C.C. told them about the alleged sexual abuse. Hearings were held on November 11, 2003, and later continued until December 12, 2005. During the hearing, the State offered witnesses to establish that the statements at issue were admissible under the tender years exception set out in Rule 803(25) of the Mississippi Rules of Evidence. After hearing the testimony of those witnesses, the trial judge held the statements to be admissible, finding that "based on her age, knowledge, and experience" *Page 977 
there was no reason for C.C. to fabricate anything, and her statements were substantially reliable. Accordingly, Smith's motion to exclude the testimony was denied.
 ¶ 5. Smith's trial was held on December 12, 2005. During pretrial motions the State moved to amend the indictment against Smith. The State requested that the language, "and the victim was under the age of 16 years," contained in each count of the indictment be amended to that of "and the victim was under the age of 14 years." The State contended that this was an amendment as to form rather than substance, which was necessary to bring the indictment in conformity with the statutory language defining sexual battery. However, the trial court denied the State's request, noting that allowing the amendment would prejudice Smith by raising the possible maximum sentence from thirty years to life imprisonment.
 ¶ 6. C.C., who was thirteen at the time, testified that on numerous occasions Smith touched her with his private parts during the time he was dating C.C.'s mother. She identified Smith's private as his penis. Specifically, she stated that Smith "put his private in [her] bottom," which she described as both her buttocks and vagina. She remembered that on one occasion Smith caused her to bleed. C.C. further testified that on other occasions she was forced to perform oral sex on him and allow him to perform oral sex on her. She stated that these incidents of abuse occurred at several different locations including: (1) her grandmother's house, (2) the trailer in which they lived, (3) the barn behind their trailer, (4) the swimming pool behind her grandmother's house, and (5) Smith's mother's house. According to C.C., she notified her grandmother that Smith was "touching [her] with his private parts," who in turn, notified C.C.'s mother. However, both refused to believe her after Smith denied the allegations. Subsequently, Smith's mother was also notified of C.C.'s accusations. In response, C.C. was chastised for lying by both her mother and Smith's mother, and she was told that if she continued to lie she would be placed in a foster home. C.C. testified that she was scared by the prospect of being placed in a foster home, and because of this, she recanted her accusation. Further, C.C. testified that she was reluctant to disclose any further abuse because she was convinced that no one would believe her. It was not until sometime later that C.C. mustered the courage to tell her stepmother and father, who then took her to see a social worker with the Department of Human Services (DHS).
 ¶ 7. Carol Langendoen and Tomiko Mackey, both licensed social workers, testified for the State as experts in the field of child sexual abuse. Langendoen, who conducted the forensic interview of C.C., was also accepted by the trial court as an expert in forensic interviewing. Mackey conducted more than fifty therapy sessions with C.C. after her forensic interview. According to both, C.C. gave very detailed information concerning three specific instances of sexual abuse by Smith. While being questioned about the varying degrees of abuse for which she was subjected, C.C. specifically stated that Smith forced her to fondle his penis, engage in oral sex, and that he "put his private in her butt," indicating both her buttocks and vagina. Although Langendoen described C.C. as being in a tentative stage of disclosure, she testified that C.C. became very descriptive once she allowed herself to open up. According to Mackey, C.C. was able to provide detailed sensory information about each incident of abuse including: where she was at the time, what the location looked and smelled like, what she was wearing, what Smith's penis looked like, *Page 978 
what she touched, what she tasted, and the physical pain she experienced. It was Langendoen's and Mackey's expert opinions that the report that C.C. provided was consistent with that of a child that had been sexually abused.
 ¶ 8. The State also presented Dr. William Marcy who testified as a medical expert for the State with a specialty in child abuse cases. After conducting a brief interview with C.C., Dr. Marcy conducted a head to toe examination on her. In doing so, he devoted special attention to those areas that C.C. complained of sexual abuse, including the genital and anal area. The most significant thing that Dr. Marcy found was that during C.C.'s anal exam the muscle inside her anus was "somewhat lax." Dr. Marcy characterized this as uncommon and the most dramatic he had ever seen. He stated that normally when the anus is probed there is a natural reaction by the muscle to tighten. In C.C.'s case the probe did not seem to be anything unusual to her. Based on his exam, Dr. Marcy was under the impression that, "at a minimum," C.C. had been subjected to anal rape, extensive fondling, and genital to genital contact. His clinical diagnosis was that C.C. had been subjected to child abuse, and he had no reason to believe that it was caused by any person other than Smith.
 ¶ 9. Smith offered several witnesses including C.C.'s mother, his mother, and himself in order to show that C.C. had fabricated her story. These witnesses alleged that N.S., one of C.C.'s childhood friends, also made similar accusations of abuse against her stepfather, and this may have planted a seed in C.C.'s mind to make up her story about Smith. Each also testified that C.C. loved Smith and had never shown any resistance or shyness toward him. Further, both C.C.'s mother and Smith's mother testified that C.C. recanted her allegation, telling them "Ok, I lied." However, on cross-examination, they admitted that this statement came after C.C. was told that if she continued to lie, she would be put in a foster home. C.C.'s mother also admitted that she originally tried to protect Smith from the authorities, but now she believed that he did commit the crime.
 ¶ 10. The State called V.S., N.S.'s mother, as a rebuttal witness. V.S. denied that N.S. had ever made any accusation of sexual abuse against her stepfather. She testified that the accusation was actually perpetrated by her mother, who was lobbying for custody of V.S. The accusation later proved to be false.
 ¶ 11. On December 15, 2005, the jury found Smith guilty on all three counts of sexual battery. Smith filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial, which was subsequently denied.
 ANALYSIS I. Whether the trial court erred for failing to dismiss Smith's indictment
 ¶ 12. Smith argues that the indictment was fatally defective because it was insufficiently clear to give notice of which sexual battery offense he was being charged. Specifically, Smith argues that the indictment's inclusion of the language "under the age of 16 years" and the victim's date of birth tracks the language of two separate subsections of the sexual battery statute. The State argues that because the birth dates of both Smith and the victim were listed in the indictment, it was sufficient to give Smith notice that he was being charged with sexual battery of a nine-year-old girl.
 ¶ 13. The issue of whether an indictment is so flawed as to warrant reversal *Page 979 
is a question of law and allows this Court a broad standard of review. Steen v. State, 873 So.2d 155,161 (¶ 21) (Miss.Ct.App. 2004) (citing Peterson v.State, 671 So.2d 647, 652 (Miss. 1996)). The primary purpose of an indictment is to notify a defendant of the charges against him so as to allow him to prepare an adequate defense. See Lewis v. State, 897 So.2d 994, 996 (¶ 9) (Miss.Ct.App. 2004). All that is required is that the indictment provide "a concise and clear statement of the elements of the crimes charged." Williams v. State,445 So.2d 798, 804 (Miss. 1984).
 ¶ 14. Mississippi Code Annotated section 97-3-95(1) (Rev. 2006) states that a person is guilty of sexual battery if he or she engages in sexual penetration with:
 (a) Another person without his or her consent;
 (b) A mentally defective, mentally incapacitated or physically helpless person;
 (c) A child at least fourteen (14) but under sixteen (16) years of age; if the person is thirty-six (36) or more months older than the child; or
 (d) A child under the age of fourteen (14) years of age; if the person is twenty-four (24) or more months older than the child.
 ¶ 15. Smith contends that, although the indictment accused him of sexual battery, it failed to specify which type of sexual battery he was being charged. He argues that the use of the language "under 16 years of age," rather than "under 14 years of age," made it unclear as to whether he was being charged under subsection (c) or subsection (d) of the statute. Therefore, Smith argues, the indictment failed to place him on notice of what crime against which he was to defend.
 ¶ 16. Each count of Smith's indictment specifically stated that he "did willfully, unlawfully, and feloniously commit sexual battery on C.C." by some form of sexual penetration or performing cunnilingus on C.C. The indictment further stated that each offense occurred at a time when Smith "was above the age of 18 years, having a date of birth of March 21, 1975," and C.C. "was under the age of 16 years, having a date of birth of November 11, 1992." It also included the time period when each of the alleged offenses took place.
 ¶ 17. We find that the indictment is not fatally flawed because it tracked the language of both subsections (c) and (d) of Mississippi Code Annotated section 97-3-95(1). The indictment included the birth date of both Smith and C.C., as well as the time of the alleged offense. The fact that it mistakenly referred to C.C. as being under the age of sixteen instead of fourteen is irrelevant. Rule 7.06 of the Uniform Rules of Circuit and County Court Practice states that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them." The indictment against Smith states the essential facts and fully notified him of the nature and cause of the accusation. Simple math makes it easy to determine that at the time of the alleged offense, C.C. was nine years old and Smith was twenty-five years old. Therefore, Smith should have reasonably anticipated being prosecuted under subsection (d). We therefore find that this issue is without merit.
 II. Whether Smith was denied effective assistance of counsel.
 ¶ 18. Smith asserts that he was denied effective assistance of counsel at trial. He *Page 980 
argues that his attorney was deficient in that he failed to call an expert witness whom the court had given financial assistance to engage, and who had given a favorable opinion. He also argues that his attorney failed to interview or contact witnesses prior to trial, investigate the case, and use a peremptory strike on a juror who knew several of the witnesses. Smith contends that his attorney's deficiencies severely prejudiced his defense.
 ¶ 19. In order to prevail on a claim of ineffective assistance of counsel, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668,694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The analysis begins with the "strong but rebuttable presumption that counsel's performance falls within the broad spectrum of reasonable professional assistance." Moody v. State,644 So.2d 451, 456 (Miss. 1994). The appellate court has to consider the totality of the circumstances in order to determine whether counsel's actions were both deficient and prejudicial.Id., There is no constitutional guarantee to errorless counsel. Strickland, 466 U.S. at 686-37,104 S.Ct. 2052.
 ¶ 20. In order to meet the second prong of theStrickland test, Smith has the burden to show a `reasonable probability' that, but for his counsel's deficient performance, a different outcome would have resulted at trial.Id. at 694, 104 S.Ct. 2052. A reasonable probability has been said to be one sufficient to undermine confidence in the outcome of the proceeding. Id. Keeping this test in mind, we review Smith's allegations of ineffective assistance of counsel.
A. Failure to Investigate
 ¶ 21. Smith claims that his attorney failed to properly investigate his case by not interviewing several witnesses or investigating the crime scenes prior to trial. Smith supports his argument by offering the affidavits of nine witnesses who allege that they were not properly interviewed. However, Smith fails to show how such an investigation would have significantly aided his case during trial. An allegation of ineffective assistance of counsel based on the failure to properly investigate must state how any additional investigation, such as interviewing witnesses or investigating facts, would have significantly aided the defense during the course of the trial. Triplett v. State, 840 So.2d 727,731 (¶ 11) (Miss.Ct.App. 2002).
 ¶ 22. The record indicates that only two new pieces of evidence would have been revealed by additional investigation of the witnesses: (1) that C.C. had previously accused her uncle of sexual battery and (2) Smith may have been hunting on the same day of one of the alleged incidents, providing him an alibi. Based on the record, we do not see how this information would have helped Smith's defense at trial. Evidence of C.C.'s prior accusation was suppressed prior to trial as improper hearsay testimony. Therefore, even if true, Smith's attorney could not present it. In fact, Smith's attorney did attempt to bring out the prior accusation during his direct examination of Debbie Bolden, Smith's mother, but the trial judge refused to allow it into evidence. Likewise, evidence of a possible alibi was unfounded. There is nothing in the record that specifies the date and time in which Smith may have been hunting. Further, this case involved at least four instances of alleged sexual abuse over a one-year period. Even if Smith was able to establish an alibi for one of the instances, he still was charged with rebutting the evidence of other instances provided by the State, which he failed to do. Therefore, this issue is without merit. *Page 981 
B.Failure to Call, Expert Witnesses
 ¶ 23. Smith next alleges that his attorney was deficient because he failed to call Dr. Marc Zimmerman to testify as an expert witness at trial. Smith contends Dr. Zimmerman's testimony was necessary to rebut the testimony of Langendoen and her forensic interview of C.C. Therefore, his attorney's failure to call Dr. Zimmerman as a witness was highly prejudicial to his defense.
 ¶ 24. There is a strong presumption that a counsel's conduct is both reasonable and professional and that decisions made are strategic. Murray v. Maggio, 736 F.2d 279,281 (5th Cir. 1984). An attorney's "choice of whether or not to file certain motions, call certain witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy." Scott v. State, 742 So.2d 1190,1196 (¶ 14) (Miss.Ct.App. 1999). "Such choices are presumed strategic `unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness.'" McGilberry v. State, 843 So.2d 21,31 (¶ 26) (Miss. 2003) (quoting Teague v. Scott,60 F.3d 1167, 1172 (5th Cir. 1995)).
 ¶ 25. The record reveals that Smith's attorney petitioned the trial court for funds in order to secure the assistance of Dr. Zimmerman, and thereafter, the court granted the petition so that Smith's attorney could conduct an initial consultation. After the consultation, Dr. Zimmerman sent a report to Smith's attorney in which he seemed to cast some doubt on the accuracy of the forensic interview conducted by Langendoen. After viewing the videotape of the interview and reading its transcript, Dr. Zimmerman noted that he thought there were several instances where Langendoen used direct and suggestive questions while questioning C.C. about the instances of sexual abuse. He did admit, however, that overall the interview appeared to conform to the accepted practices of interviewing children. Further, he also admitted that it was difficult to determine the validity of the interview without first knowing: how many different times C.C. was asked about the abuse and by how many people, what comments had been made to her, and the circumstances surrounding her life.
 ¶ 26. It is clear from the record that Smith's attorney was not ineffective by failing to call Dr. Zimmerman as an expert witness to testify at trial. The fact that C.C. had shared the same consistent story of abuse with several different people may have rendered Dr. Zimmerman's report unreliable in the eyes of Smith's attorney. Smith was not required to call an expert of his own to refute the opinions of the State's expert. Further, Smith's attorney attempted to cast doubt himself on the opinions of Langendoen and Mackey during cross-examination in which he used an entire line of questioning to explore whether suggestive techniques were used during their respective interviews. The record also seems to suggest that after the trial court paid for the initial consultation, Smith failed to produce the necessary funds to secure further assistance from Dr. Zimmerman. In fact, Smith's attorney filed two motions for continuance so that he could retain the funds needed to pay for Dr. Zimmerman's services, both of which were granted by the trial. Accordingly, we are not in a position to question the manner in which Smith's attorney tried this case. We certainly agree that counsel should energetically prepare to defend the case, but "[d]ecisions regarding which witnesses to call are peculiarly within the gambit of trial strategy." King v.State, 679 So.2d 208, 211 (Miss. 1996). Likewise, attorneys are permitted wide latitude in their choice and employment of defense *Page 982 
strategy. Hiter v. State, 660 So.2d 961, 965
(Miss. 1995). Therefore, we do not find a basis for reversal here.
C. Failure to Strike Juror No. 17
 ¶ 27. Lastly, Smith argues that his attorney was ineffective for failing to use a peremptory strike in order to dismiss juror no. 17 based on her admission that she knew several of the proposed witnesses.
 ¶ 28. During voir dire, the venire members were asked if they knew any of the witnesses who were expected to testify during trial. Juror no. 17 responded that she knew several of the witnesses who were family members of C.C., including her mother and grandmother. However, this response did not automatically disqualify juror no. 17 from sitting on the jury. After further inquiry, the trial judge determined that juror no. 17 did not have a personal relationship with the above named witnesses but simply knew them as members of the community. It is also clear that juror no. 17 admitted to knowing witnesses for both the State and Smith. Most important, juror no. 17 answered that knowing the witnesses would not affect her decision in the case, confirming that she could be fair and impartial to both Smith and the State.
 ¶ 29. As previously noted, trial counsel is faced with many decisions in the course of representing a defendant. Just as the decision on whether to call certain witnesses, counsel's decision to use or forego peremptory strikes falls within the discretion of planning and developing a trial strategy.Bennett v. State, 933 So.2d 930, 943 (¶ 36) (Miss. 2006) (citing Cole v. State, 666 So.2d 767, 777
(Miss. 1995)).
 ¶ 30. Smith's post-trial challenge of his counsel's decision not to strike juror no. 17 includes no specific showing that this juror was not fair and impartial. Both the trial judge and Smith's counsel questioned juror no. 17 individually. Based on the record, juror no. 17 appeared to take her job seriously, stated with certainty that she could be fair and impartial, and resolved any questions concerning her connection with the witnesses. Despite circumstances that tend to indicate a potential for bias on the part of a juror, a juror's promise that he will be able to be fair and impartial is entitled to considerable deference. Toyota Motor Corp.v. McLaurin, 642 So.2d 351, 356-57 (Miss. 1994) (citingScott v. Ball, 595 So.2d 848, 850 (Miss. 1992)). Without any evidence that juror no. 17 was so biased as to poison the verdict of the jury, Smith has failed to show that his attorney's failure to strike her affected the outcome of his case. The issue is without merit.
 ¶ 31. Thus, for the foregoing reasons we hold that Smith has wholly failed to demonstrate his counsel was ineffective or that he was prejudiced by any alleged ineffective assistance.
 III. Whether the trial court erred in allowing improper hearsay testimony to be admitted into evidence under the tender years exception.
 ¶ 32. Smith argues that the trial court committed error by admitting the hearsay testimony of C.C., the alleged victim, under the tender years exception to the hearsay rule provided in Mississippi Rule of Evidence 803(25). Specifically, Smith challenges the testimony of Langendoen, Mackey, and Cassidy Overby in which they described what C.C. told them during their respective interviews with her. He claims that C.C.'s statements could not be held to be substantially reliable under Rule 803(25) because she had an apparent motive to lie. Therefore, Smith contends that the trial court erred in allowing the State to improperly bolster C.C.'s testimony with this evidence. *Page 983 
 ¶ 33. We review a circuit court's decision to admit testimony under the tender years exception as we review other issues regarding admission of testimonial evidence. "The admission of testimonial evidence is within the sound discretion of the trial court, which will be found in error only if the ruling was an abuse of discretion." Elkins v.State, 918 So.2d 828, 832 (¶ 13) (Miss.Ct.App. 2005). Mississippi Rule of Evidence 803(25) provides in pertinent part:
 A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness. . . .
The official comment to Rule 803(25) of the Mississippi Rules of Evidence list several factors that the trial court should consider in determining if the statement is substantially reliable. These factors include:
 (1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated. Corroborating evidence may not be used as an indicia of reliability.
M.R.E. 803(25) cmt.
 ¶ 34. As required by Rule 803(25), the trial judge conducted a hearing outside the jury's presence. At this hearing, the trial judge heard the testimonies of Langendoen, Mackey, Overby, and C.C. After considering the evidence presented by the State, as well as the factors required of him under Rule 803(25), the trial judge determined that the time, content, and circumstances of C.C.'s statements provided substantial indicia of reliability. We find the record to support the trial judge's ruling. Accordingly, we hold that the trial judge did not abuse his discretion by admitting the testimony of Langendoen, Mackey, and Overby at trial. The issue is without merit.
 IV. Whether the trial court erred in denying Smith's challenges to jurors during voir dire.
 ¶ 35. Smith contends that the trial court committed plain error in denying his challenges to jurors nos. 17, 23, and 31 during voir dire. Smith is procedurally barred from challenging jurors nos. 23 and 31 on appeal because he failed to object to their presence on the jury at trial. "It is well stated that failure to make a contemporaneous objection waives that issue for the purposes of an appeal." Robertson v. State,921 So.2d 348, 351 (¶ 7) (Miss.Ct.App. 2005) (citingSmith v. State, 729 So.2d 1191, 1210 (¶ 87) (Miss. 1998)). Therefore, we find that this issue as to jurors nos. 23 and 31 has been waived. As to juror no. 17, Smith argues that she should have been dismissed for cause based on her admission that she knew many of the witnesses that were going to be called to testify during trial.
 ¶ 36. "The circuit judge, as he must, has wide discretion in determining *Page 984 
whether to excuse any prospective juror, including one challenged for cause." Scott, 595 So.2d at 849. "The circuit judge has an absolute duty, however, to see that the jury selected to try any case is fair, impartial and competent." Id. at 850 (citing Miss. Const., art. 3, § 26). Mississippi Code Annotated section 13-5-79 (Rev. 2002) provides:
 Any person, otherwise competent, who will make oath that he is impartial in the case, shall be competent as a juror . . ., if it appears to the satisfaction of the court that he has no bias or feeling or prejudice in the case, and no desire to reach any result in it, except that to which the evidence may conduct. Any juror shall be excluded, however, if the court be of opinion that he cannot try the case impartially, and the exclusion shall not be assignable for error.
 ¶ 37. As previously discussed, the trial judge conducted his own voir dire of juror no. 17 as to the extent of her relationship with the named witnesses. Juror no. 17 responded that she did not have a close personal relationship with the witnesses, but only knew them as members of the community. The trial judge also asked juror no. 17 if her knowledge of the witnesses would affect her ability to decide the outcome of the case. Juror no. 17 responded, "no," and confirmed that she could be fair and impartial. As stated above, this should be afforded considerable deference.
 ¶ 38. "The judgment-call about jurors with conflicts is within the province of the judge, and `one we will not on appeal second guess in the absence of a record showing a clear abuse of discretion.'" Scott, 595 So.2d at 850. The record lacks any showing that the trial judge abused his discretion by failing to dismiss juror no. 17 for cause. Therefore, we would affirm as to this issue.
 V. Whether the trial court erred by denying Smith's motions based on the sufficiency of the evidence.
 ¶ 39. Smith contends that the evidence in this case was insufficient to sustain a conviction. He argues that the overwhelming evidence consisted of the testimony of an incompetent minor, whose testimony was allegedly coached. Therefore, his motions for directed verdict and judgment for acquittal notwithstanding the verdict or, in the alternative, for a new trial should have been granted.
 ¶ 40. A motion for a directed verdict challenges the legal sufficiency of the evidence. Our standard in regards to these challenges is well stated: In reviewing the sufficiency of the evidence, all evidence supporting the guilty verdict is accepted as true, and the State must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence. Bell v. State, 910 So.2d 640, 646 (¶ 16) (Miss.Ct.App. 2005). Furthermore, the jury determines the credibility of witnesses and resolves conflicts in the evidence. Evans v. State, 725 So.2d 613, 680-81 (¶ 293) (Miss. 1997).
 ¶ 41. Smith was convicted of three counts of sexual battery under Mississippi Code Annotated section 97-3-95(1)(c) (Rev. 2006) which defines sexual battery as engaging "in sexual penetration with. . . . (c) a child at least fourteen (14) but under sixteen (16) years of age; if the person is thirty-six (36) or more months older than the child." Smith argues that the State failed to prove beyond a reasonable doubt that he committed sexual battery on C.C. based on inconsistencies in her testimony. Smith also claims that C.C.'s answers were coerced by Langendoen during her forensic interview. This issue was taken up at the suppression hearing previously discussed, in which the trial judge found *Page 985 
C.C.'s responses during her forensic interview admissible under the tender years exception of Rule 803(25) of the Mississippi Rules of Evidence. We have already held that the trial court did not error by admitting this evidence.
 ¶ 42. After reviewing the record, we find that the trial court did not err in denying Smith's motions for a directed verdict or judgment notwithstanding the verdict. Among the evidence presented at trial were the testimonies of at least six witnesses, which showed a consistency in C.C.'s allegations. Further, expert testimony showed that C.C. exhibited both the physical and psychological characteristics of a child who had been subjected to sexual abuse. The evidence in this case, viewed in the light most favorable to the State, establishes that a rational jury could have found that Smith committed sexual battery on C.C. beyond a reasonable doubt. While certain evidence conflicted about the time frames and incidents of abuse, we must keep in mind that in our review, all credible evidence supporting Smith's guilt is accepted as true. We find that there was sufficient proof presented at trial to establish the essential elements of sexual battery.
 ¶ 43. We must note, and Smith correctly asserts, that the trial court did err by proceeding under subsection () instead of subsection (d) of the section 97-3-95(1), given that C.C. was under the age of fourteen at the time of the alleged offense. This made it impossible to prove the elements of subsection (c) because C.C. was not between the age of fourteen and sixteen at the time of incidents. However, it is our opinion that such error was harmless and did not affect Smith's defense. In fact, Smith never attempted to present a defense at trial based on the age of the victim. As discussed in the indictment issue above, Smith knew or should have known he was being charged with committing sexual battery on a nine-year-old girl. Further, the only difference between the two subsections is the possible maximum sentence that can be imposed depending on the age of the victim. Subsection (c) carries with it a possible maximum sentence of thirty years while subsection (d) carries with it a life sentence. Therefore, any error on the part of the trial court, was committed in favor of Smith, as it reduced the possible sentence he could receive.
 ¶ 44. This issue is without merit.
 VI. Whether the trial court erred by not declaring a mistrial based upon a complete deterioration of the attorney/client relationship between Smith and his attorney.
 ¶ 45. Smith contends that the trial court should have granted a mistrial sua sponte because he was denied a fair sentencing due to a strained relationship between him and his attorney. He argues that as a result of this relationship, his attorney failed to present any mitigating testimony or evidence to help him receive a fair or proper sentence.
 ¶ 46. We review "motions for mistrial under an abuse of discretion standard." Parks v. State, 930 So.2d 383,386 (¶ 8) (Miss. 2006) (citing Tate v. State,912 So.2d 919, 932 (¶ 41) (Miss. 2005)). "The trial court must declare a mistrial when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case; however, the trial judge is permitted considerable discretion in determining whether a mistrial is warranted because the judge is best positioned to measure the prejudicial effect."Id.
 ¶ 47. We cannot say the trial court abused its discretion in this case. In fact several witnesses were called by Smith's *Page 986 
attorney during sentencing to testify as to Smith's character including: his wife, his grandmother, and his mother, and his stepfather. Therefore, we find this issue is without merit.
 VII. Whether jury instructions C-7, C-8, and C-9 were not proper statements of the law and based on a fatally flawed indictment.
 ¶ 48. Smith challenges the form of the verdict instruction of each count of the indictment, alleging that they fail to properly state Mississippi law. However, Smith failed to object to these instructions at trial and is, therefore, procedurally barred from raising the issue for the first time on appeal. In order for this Court to consider a jury instruction issue on appeal, the defendant must have made a specific objection to the jury instruction in question at the trial level. Harrisv. State, 861 So.2d 1003, 1013 (¶ 18) (Miss. 2003). Accordingly, Smith waived any objection by not objecting to the jury instructions at trial, and this Court declines to address this issue upon appeal.
 CONCLUSION ¶ 49. Smith has failed to raise any issue which would warrant reversal by this Court. For the foregoing reasons, the judgment of the trial court is affirmed.
 ¶ 50. THE JUDGMENT OF THE CIRCUIT COURT OF PONTOTOCCOUNTY OF CONVICTION OF THREE COUNTS OF SEXUAL BATTERY ANDSENTENCE OF THIRTY YEARS FOR EACH COUNT, WITH TEN YEARSSUSPENDED IN EACH COUNT, TO RUN CONSECUTIVELY ALL IN THECUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ISAFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THEAPPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.
[1] The Mississippi Court of Appeals does not reveal the actual names of children in sex offense cases.