# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-KA-00988-SCT

*MALCOLM CLIFTON WEEKS a/k/a MALCOLM CLIFTON WEEKS, SR. a/k/a MALCOLM C. WEEKS a/k/a MALCOLM WEEKS, SR. a/k/a MALCOLM WEEKS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/20/2012 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KEVIN D. CAMP |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ELLIOTT FLAGGS |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/22/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. Malcolm Weeks Sr. was indicted and tried for sexually abusing his fourteen-year-old daughter. He was convicted of one count of child fondling and two counts of sexual battery.[1] On appeal, Malcolm asserts three assignments of error: 1) that the State was permitted to substantively amend his indictment; 2) that the evidence was insufficient to support the jury's

---

[1]Weeks was indicted for two counts of child fondling and two counts of sexual battery.

verdicts; and 3) that the jury's verdicts were against the overwhelming weight of the evidence.

## FACTS AND PROCEDURAL HISTORY

¶2.     Malcolm Weeks Sr. and his wife "Sarah" have two children, "Wesley" and "Mary."[2] Prior to September 19, 2010, the family lived together in Rankin County, Mississippi. On the morning of September 19, 2010, Malcolm went into Mary's room to wake her up for church. When Sarah saw Malcolm leaving Mary's room, she sensed something was wrong and asked him what he was doing in there. Unsatisfied with Malcolm's response to her question,[3] Sarah called Mary to the front porch and asked her about Malcolm's behavior. Initially, Mary denied that Malcolm had been doing anything wrong but eventually confessed that he had been touching her inappropriately. Sarah immediately left the house with Wesley and Mary, stopped by her parents' house briefly, and then took Mary to the Florence police department. At the Florence police department, Mary was interviewed by William Nelson, a deputy with the Rankin County Sheriff's Department. Mary told Officer Nelson that Malcolm had touched her vagina and had performed oral sex on her that morning. She said Malcolm had been touching her inappropriately for about three months and described other incidents in which Malcolm had touched her vagina with his penis, hands, and mouth. When asked by Officer Nelson where she was abused, Mary said her bedroom. She did not tell

---

[2]Fictitious names have been used for the minor victim and her family members to protect the identity of the victim. Members of the Weeks family will be referred to by first names to avoid confusion.

[3]The parties dispute how Malcolm responded. Malcolm claims he told Sarah that "he was waking [Mary] up for church," while Sarah claims he said "nothing."

Officer Nelson that any incidents had occurred in the family's living room, her parents' bedroom, or Malcolm's truck. However, at trial, Mary testified that incidents also occurred in those three locations. She estimated that Malcolm had touched her on more than twenty separate occasions. Mary said the incidents typically occurred in the morning and that she would shower afterward. Mary had not showered the morning of September 19, 2010, so Officer Nelson picked up a sexual-assault examination kit and escorted Mary and Sarah to the University of Mississippi Medical Center (UMMC) emergency room. At UMMC, Mary was seen by a social worker named Jennifer Cook. Cook heard Mary say Malcolm had touched her vagina with his fingers and his mouth that morning. She also heard Mary describe a separate incident in which Malcolm had made her touch his penis until he ejaculated. Mary told Cook these incidents had been occurring for approximately a month and did not mention any incidents happening in Malcolm's truck or involving a vibrator. Based on her experience, Cook testified that Mary's disclosure was age-appropriate and consistent with a child who had been sexually abused. At UMMC, Mary also was seen by a pediatric nurse named Tierra Brown. Brown took Mary's personal history and collected samples from her for the sexual-assault examination kit. Mary told Brown that Malcolm had touched her vagina that morning with his fingers, penis, and mouth, and that during a prior incident, he had touched her with a vibrator. Mary was later interviewed on September 23, 2010, by Rachel Daniels, a forensic interviewer with the Mississippi Children's Advocacy Center. Mary told Daniels how Malcolm had sexually abused her. Mary did not tell Daniels that any incidents had occurred outside her bedroom, but Daniels testified that it would not surprise her if Mary had disclosed additional incidents and locations of abuse after the

3

interview. Daniels found Mary's disclosure to be consistent with that of a sexually abused child. This interview was observed by the Rankin County investigator assigned to the case, Shelia Tucker. Tucker testified that, during the interview, Mary stated that Malcolm had touched her vagina with his hand, mouth, and penis, and that he had made her touch his penis until he ejaculated. In addition to observing Daniels's interview of Mary, Tucker reviewed Mary's medical reports and confirmed that all of Mary's disclosures to doctors, nurses, and social workers were consistent. Tucker also testified that she had brought the samples from Mary's sexual-assault examination kit and a DNA sample from Malcolm to Scales laboratory for testing. At Scales laboratory, Kathryn Rodgers, a forensic DNA analyst, performed a Y-chromosome test on the vaginal and vulvar swabs taken from Mary as part of her sexual-assault examination kit.[4] With the Y-chromosome tests, Rodgers obtained a partial profile from both the vaginal and vulvar swabs taken from Mary, confirming to a scientific certainty that there was male DNA inside Mary's vagina. The partial profiles of both swabs were consistent with a male from Malcolm's paternal line. Therefore, neither he nor any of his patrilineal male relatives could be excluded as the contributor of the DNA found inside and outside of Mary's vagina. The testimony of Rodgers concluded the State's case-in-chief. During the State's case-in-chief, the trial judge discovered that the sexual-battery counts of the indictment tracked the wrong subsection of the sexual-battery statute. The sexual-battery statute has separate sections for victims under the age of fourteen and those between the ages

---

[4]A Y-chromosome test is often used when a sample is likely to have a large amount of female DNA and only a minimal amount of male DNA. This test cannot pinpoint an individual but it can pinpoint a paternal line.

of fourteen and sixteen.[5]  Subsection (c) applies to victims between the ages of fourteen and

sixteen and applies if the perpetrator is more than thirty-six months older than the victim.[6]

Subsection (d) applies to victims under the age of fourteen and applies if the perpetrator is

more than twenty-four months older than the victim.[7]   The sexual-battery counts of

Malcolm's original indictment recognized that Mary was fourteen at the time of the alleged

criminal behavior, but then tracked subsection (d).  The sexual battery counts originally read:

> Malcolm Clifton Weeks . . . a male human being above the age of eighteen
> (18) years, whose date of birth is October 18, 1970, did willfully, unlawfully,
> and intentionally engage in sexual penetration . . . with *[Mary], a female child
> (14) years of age*, whose date of birth is March 25, 1996, by performing
> cunnilingus on [Mary], at a time when Malcolm Clifton Weeks was more than
> *twenty-four (24) months* older than [Mary] . . . in violation of Section 97-3-
> 95(1)*(d)*, Mississippi Code Annotated (1972, as amended) . . . .

(Emphasis added.)

The State moved to amend the indictment to track subsection (c).  Malcolm objected to the

motion, but the trial court allowed the amendment.  The sexual-battery counts, as amended,

read:

> Malcolm Clifton Weeks . . . a male human being above the age of eighteen
> (18) years, whose date of birth is October 18, 1970, did willfully, unlawfully,
> and intentionally engage in sexual penetration . . . with *[Mary], a female child
> (14) years of age*, whose date of birth is March 25, 1996, by performing
> cunnilingus on [Mary], at a time when Malcolm Clifton Weeks was more than
> *thirty-six (36) months* older than [Mary] . . . in violation of Section 97-3-
> 95(1)*(c)*, Mississippi Code Annotated (1972, as amended) . . . .

(Emphasis added.)

---

[5]Miss. Code Ann. § 97-3-95(1) (Rev. 2006).

[6]Miss. Code Ann. § 97-3-95(1)(c) (Rev. 2006).

[7]Miss. Code Ann. § 97-3-95(1)(d) (Rev. 2006).

5

¶3.     The only witness for the defense was Malcolm himself. Malcolm emphasized that he consistently had denied ever touching Mary inappropriately, that he had volunteered to assist the police in their investigation, and that he had refused to plead guilty in exchange for a lesser sentence. This testimony was consistent with that of Tucker, who had acknowledged on cross-examination that Malcolm had called her, that he had volunteered to come to the police department, and that he repeatedly had denied the allegations.

¶4.     The jury found Malcolm guilty of two counts of sexual battery and one count of child fondling. Weeks received a thirty-year sentence for each of the sexual-battery convictions and a fifteen-year sentence for the child-fondling conviction. The second thirty-year sentence and the fifteen-year sentence run concurrently with each other but consecutively to the first thirty-year sentence. Following the trial court's denial of his motion for judgment notwithstanding the verdict or, in the alternative, a new trial, Malcolm timely filed this appeal.

## LAW AND ANALYSIS

¶5.     Three issues are presented on appeal: 1) whether the trial court allowed the State to substantively amend Malcolm's indictment; 2) whether there was sufficient evidence to support the jury's verdicts;[8] and 3) whether the verdicts were against the overwhelming weight of the evidence.

---

[8]Malcolm does not specifically attack the legal sufficiency of the State's evidence. Instead, he makes arguments against both the sufficiency and the weight of the evidence under one heading reading "The lower court erred in denying the Defendant's Motion for JNOV, and in failing to grant a new trial where the jury returned a verdict against the overwhelming weight of the evidence." To avoid confusion, these issues are addressed separately.

## A. Amendment of Indictment

¶6.     Malcolm was indicted for two counts of sexual battery under Mississippi Code Section 97-3-95(1) which reads:[9]

> A person is guilty of sexual battery if he or she engages in sexual penetration with:
> (a) Another person without his or her consent;
> (b) A mentally defective, mentally incapacitated or physically helpless person;
> (c) A child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child; or
> (d) A child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child.[10]

The counts initially tracked subsection (d), despite the fact that the indictment explicitly stated Mary was fourteen years old at the time of the alleged criminal behavior. At trial, the State was permitted to amend the indictment to change subsection (d) to subsection (c) and twenty-four (24) months to thirty-six (36) months. Malcolm contends that the amendments were improper because they were of substance, as opposed to form.

¶7.     The question of whether an indictment is legally sufficient is a question of law and must be reviewed de novo.[11] It is well-established that "courts may amend indictments only

---

[9]Malcolm also was indicted for two counts of child fondling under Mississippi Code Section 97-5-23, Count I and Count III in the indictment. These counts were not amended. Malcolm challenges the validity of his Count III conviction based on the sufficiency and the weight of the evidence. Those arguments are addressed *infra*. Malcolm was not convicted of Count I; therefore it is not at issue in this appeal.

[10]Miss. Code Ann. § 97-3-95(1) (Rev. 2006).

[11]*Patton v. State*, 109 So. 3d 66, 80 (Miss. 2012).

to correct defects of form; however, defects of substance must be corrected by the grand jury.[12]

> [A] change in the indictment is permissible if it does not alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case.[13]

"The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood will be equally available after the amendment is made."[14]

¶8.    The amendments to Malcolm's indictment are akin to those that were at issue in *Smith v. State*.[15] Like Malcolm, Smith was indicted under Mississippi Code Section 97-3-95(1) for sexual battery.[16] Smith was indicted for three counts of sexual battery, and each count stated that "at the time of the said offense, . . . the victim was under the age of 16 years, having a date of birth of November 11, 1992."[17] At trial, the State moved to amend the indictment to have each count state that, at the time of the alleged crime, the victim was "under the age of 14 years, having a date of birth of November 11, 1992" in order "to bring the indictment in conformity with the statutory language defining sexual battery."[18] The trial court denied the State's motion because the proposed amendment would have increased Smith's potential

---

[12]*Id.* (internal quotations omitted).

[13]*Id.* (quoting *Montgomery v. State*, 891 So. 2d 179, 186 (Miss. 2004)).

[14]*Patton*, 109 So. 3d at 81 (internal quotations omitted).

[15]*Smith v. State*, 989 So. 2d 973 (Miss. Ct. App. 2008).

[16]*Id.* at 975.

[17]*Id.* at 976.

[18] *Id.* at 977.

sentence from thirty years to life imprisonment, a result the trial court deemed prejudicial to Smith.[19]   On appeal, Smith argued that the indictment was fatally flawed because its "inclusion of the language 'under the age of 16 years' and the victim's date of birth tracks the language of two separate subsections of the sexual-battery statute," namely subsections (c) and (d) which also are at issue here.[20]   The Court of Appeals held the indictment was sufficient, despite tracking the language of both subsections and listing the wrong age for the victim, because the indictment included the birthdays of both Smith and the victim and the date of the alleged crime.[21]   Therefore, a "simple math" calculation would have notified Smith that he was being charged with sexually battering a nine-year-old girl when he was twenty-five years old and, as such, he should have anticipated being prosecuted under subsection (d).[22]

¶9.     As in *Smith*, Malcolm's indictment included the birth dates of Mary and Malcolm and the dates of the alleged criminal behavior.  It also specifically stated that Mary was fourteen at the time of the alleged crimes.  Malcolm argues his case is distinguishable from *Smith* because Smith's indictment did not name a specific subsection of Mississippi Code Section 97-3-95(1), whereas his indictment named the wrong subsection.  While this factual distinction is correct, it does not necessitate a different result.  An indictment is sufficient

---

[19]*Id.* at 977.  Notably, the same prejudice does not accompany the amendment at issue here.  By changing Weeks's indictment to charge him under subsection (c) as opposed to subsection (d), the State reduced his potential maximum sentence.

[20]*Id.* at 978.

[21]*Id.* at 979.

[22]*Id.*

despite citing the wrong statutory subsection so long as it contains a "clear and concise statement of the elements of the crime charged."[23] It was clear from the face of Malcolm's original indictment that he was charged with sexually battering his fourteen-year-old daughter when he was thirty-nine years old. As such, Malcolm should have anticipated being prosecuted under subsection (c).

¶10. The amendments also did not alter Malcolm's defense.[24] Malcolm never claimed he was innocent based on Mary's age. Rather, he consistently maintained that he never inappropriately touched Mary. Malcolm's original indictment was sufficient, and the State's amendments corrected only defects of form. This issue is without merit.

**B. Sufficiency of the Evidence**

¶11. Malcolm claims that the State failed to present sufficient evidence to support any of his three convictions, and that the trial court erred in denying his motion for judgment nothwithstanding the verdict (JNOV). When reviewing the denial of a motion for JNOV, the evidence is viewed in the light most favorable to the verdict.[25] A reversal is appropriate "only where, with respect to one or more of the elements of the offense charged, the evidence so

---

[23]*See Evans v. State*, 916 So. 2d 550, 552 (Miss. Ct. App. 2005) (citing *White v. State*, 153 So. 387, 388 (Miss. 1934)).

[24]*See Givens v. State*, 730 So. 2d 81 (Miss. Ct. App. 1998) (amendment changing the date of the alleged crime held to be one of form because the date change did not change the crime charged and did not prejudice Givens's defense, which was not time-specific).

[25]*Patton*, 109 So. 3d at 82.

considered is such that reasonable and fair-minded jurors could only find the accused not guilty."[26]

¶12.    To convict Malcolm of child - fondling, the State had to prove that Malcolm, "for the purpose of gratifying his . . . lust, or indulging his . . . depraved licentious sexual desires, . . . handle[d], touch[ed] or rub[bed] [Mary] with hands or any part of his . . . body or any member thereof" when he was more than eighteen years old and Mary was less than sixteen years old.[27]   And, to convict Malcolm of sexual battery, the State had to prove Malcolm was at least thirty-six months older than Mary and that he sexually penetrated her when she was between the ages of fourteen and sixteen.[28]   The parties do not dispute that Mary was fourteen and Malcolm was thirty-nine at the time of the alleged crimes.   The question is simply whether there was sufficient evidence: 1) that Malcolm fondled Mary on September 19, 2010, and 2) that Malcolm sexually penetrated Mary between June 16, 2010, and September 18, 2010, and on September 19, 2010.   In the sexual-battery context,

> Sexual penetration includes cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body.[29]

¶13.    Mary testified that Malcolm had touched her vagina and had performed oral sex on her the morning of September 19, 2010.   She also testified that Malcolm had touched her vagina

---

[26]*Id.* (quoting *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993) (internal quotations omitted)).

[27]Miss. Code Ann. § 97-5-23(1) (Rev. 2006).

[28]Miss. Code Ann. § 97-3-95(c) (Rev. 2006).

[29]Miss. Code Ann. § 97-3-97(a) (Rev. 2006) (internal quotations omitted).

11

several times between the end of June 2010 and September 18, 2010, with his hands, mouth, penis, and a vibrator. Such behavior constitutes sexual penetration under Section 97-3-97(a) and fondling under Section 97-5-23.[30] Mary's story was corroborated by testimony from several witnesses who heard Mary recount her allegations of abuse during the investigative process. DNA evidence also established the presence of male DNA inside and outside Mary's vagina and could not eliminate Malcolm as a potential source of the DNA. We find sufficient evidence supported Malcolm's sexual-battery and child-fondling convictions. As such, the trial court did not err in denying Malcolm's motion for JNOV.

## C. The Weight of the Evidence

¶14. Finally, Malcolm argues that the jury's verdict is against the overwhelming weight of the evidence and faults the trial court for denying his motion for a new trial. A "motion for a new trial is addressed to the discretion of the trial court, and such motion should be considered with caution. '[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.'"[31] This Court must "weigh the evidence in the light most favorable to the verdict" and must therefore look at the evidence in the light most favorable to the State's theory of the case.[32] This Court

---

[30]*See* **Brady v. State**, 722 So. 2d 151 (Miss. Ct. App. 1998) (evidence that defendant kissed nine-year-old victim's vagina was sufficient to establish that defendant had performed cunnilingus on the victim for the purpose of proving sexual penetration); **Golden v. State**, 984 So. 2d 1026 (Miss. Ct. App. 2008) (seven-year-old victim's testimony that defendant licked her vagina three or four times was sufficient to support fondling conviction under Mississippi Code Section 97-5-23).

[31]**Weatherspoon v. State**, 56 So. 3d 559, 564 (Miss. 2011).

[32]*Id.* at 564 (citations omitted).

"will disturb the verdict only 'when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'"[33] For the reasons expressed in the sufficiency-of-the-evidence analysis, this Court will not sanction an unconscionable injustice to allow Malcolm's convictions to stand. The overwhelming weight of the evidence supported the jury's verdicts, and the trial court did not err in denying Malcolm's motion for a new trial.

**CONCLUSION**

¶15.    Malcolm Weeks Sr. was indicted and tried for sexually abusing his fourteen-year-old daughter. Malcolm was convicted of one count of child - fondling and two counts of sexual battery. Malcolm's indictment was sufficient, even though the sexual-battery counts initially tracked the wrong subsection of the sexual-battery statute. The indictment provided Malcolm with notice of the charges against him, because it specifically alleged that he abused his fourteen-year-old daughter and included his birthday, his daughter's birthday, and the dates of the alleged crimes. The trial court appropriately granted the State's motion to amend the indictment to reflect the appropriate subsection of the sexual-battery statute, as the amendment was one of form. The trial court also appropriately denied Malcolm's motion for judgment notwithstanding the verdict, or in the alternative a new trial, because the jury's verdicts were sufficiently supported by the evidence and were not against the overwhelming weight of the evidence. The judgment of the Rankin County Circuit Court is affirmed.

---

[33]*Ben v. State*, 95 So. 3d 1236, 1253 (Miss. 2012) (citing *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005)).

13

¶16.    **COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNT III: CONVICTION OF GRATIFICATION OF LUST AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNT IV: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  THE LAST FIFTEEN (15) YEARS IN COUNT IV ARE STAYED AND THAT PORTION OF THE SENTENCE IS SUSPENDED AND THE APPELLANT SHALL BE RELEASED AND PLACED ON FIVE (5) YEARS SUPERVISED PROBATION AND IS REQUIRED TO REGISTER AS A SEX OFFENDER. SENTENCES IMPOSED IN COUNTS III AND IV SHALL RUN CONCURRENTLY WITH EACH OTHER BUT CONSECUTIVELY TO SENTENCE IN COUNT II, WITH CONDITIONS.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**