BARNES, J.,
 

 for the Court.
 

 ¶ 1. Patricia Ann Brown was convicted by a Pontotoc County Circuit Court jury of possession of cocaine, in an amount greater than .10 gram but less than 2 grams, and sentenced as a habitual offender to life in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for parole or probation. She now appeals this conviction and sentence. Finding no error, we affirm.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On January 4, 2007, Julius Hole-some, a long-time friend of Brown, was spending the night with Diane Rippley, a woman with whom he had a sexual relationship. As Holesome was married to another woman, Melanie Holesome (Melanie), the couple stayed that evening at the home of Jeff Pegues, another friend of Holesome. At approximately 4:00 a.m. the next morning, Brown appeared at Pegues’s residence and woke Holesome and Ripp-ley. Brown and Holesome proceeded to smoke crack that Brown had brought with her. Brown then asked Holesome to accompany her to Burelson Trailer Park so she could buy an “eight ball” of crack. They left together, angering Rippley. When Brown and Holesome returned, Rippley confronted Brown. Holesome asked Rippley to leave, and she complied. Angry, and riding around aimlessly, Ripp-ley encountered the City of Pontotoc police chief, Larry Poole. She informed him of
 
 *1208
 
 Brown’s and Holesome’s drug activities. Chief Poole contacted Officer Kevin Rodgers with this information; Officer Rodgers and Narcotics Agent Mike Doss proceeded to Pegues’s residence.
 

 ¶ 3. At some point that morning, Brown contacted Melanie and told her that Ripp-ley was with her husband. According to Melanie’s testimony, she went to work that morning but, being upset about the situation, soon left work and went to find Hole-some. She encountered Rippley on the road and followed her back to Pegues’s house. After another argument ensued, Rippley left. Thus, Melanie was outside on the porch of Pegues’s house when law enforcement arrived. Holesome came out of the house, and Agent Doss found two knives after a search of his person. As Holesome was a prior felon, he was arrested. The officer then called for Brown. She came out of the house, sat on the porch steps, and began to empty her pockets. Officer Rodgers noticed a white object fall from her pocket onto the ground. Melanie testified that she, too, saw the white object fall from Brown’s pocket. Officer Rodgers picked the object up and, noting that it looked like crack cocaine, arrested Brown. Another small, white object was also found on the ground by Agent Doss; however, it was later discerned to be just a piece of glass. Upon obtaining permission from Pegues to search the home, Agent Doss found more cocaine inside the home. Holesome admitted to law enforcement that the drugs found inside the home were his, although he later claimed that he only said that so Pegues would not get into trouble.
 

 ¶ 4. Brown and Holesome were indicted by a Pontotoc County grand jury for possession of cocaine, in an amount greater than .10 gram but less than 2 grams, in violation of Mississippi Code Annotated section 41-29-139 (Rev.2005). As Hole-some had numerous prior felony convictions, including two crimes of violence, he was charged under Mississippi Code Annotated section 99-19-83 (Rev.2007) as a habitual offender, which carries a maximum sentence of life imprisonment. However, the indictment only listed two prior nonviolent felony convictions for Brown. Therefore, she was only charged as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007), which carries an enhanced penalty of the maximum sentence of the charged crime.
 
 [1]
 
 At the arraignment on June 29, 2007, both Brown and Holesome pleaded not guilty.
 

 ¶ 5. On December 12, 2007, the State moved to amend the indictment to delete the habitual offender language as it related to Holesome, and he changed his plea to guilty. The court accepted Holesome’s plea to the amended indictment and sentenced him to eight years in the custody of the MDOC, with one year suspended and one year of post-release supervision. That same day, the indictment was also amended, in open court proceedings, to change the habitual offender statute against Brown from section 99-19-81 to section 99-19-83. This amendment was due to the fact that the State discovered, after Brown’s initial indictment, that she had a prior conviction for armed robbery, a crime of violence, for which she had been sentenced to twenty years in the custody of the MDOC.
 
 [2]
 
 Consequently, the amend
 
 *1209
 
 ment enhanced Brown’s possible maximum sentence for the current charge from eight years to mandatory life imprisonment without eligibility for parole or probation.
 
 [3]
 

 ¶ 6. On March 10, 2008, Brown filed two motions in limine to exclude the evidence logs and crime lab reports, as they included references to the other cocaine found inside the home, not just the rock of cocaine which fell from Brown’s pocket. At a hearing on the motions, the circuit court judge denied Brown’s motions to exclude the evidence logs and lab results, but noted that the testimony only attributed to Brown the “rock” of cocaine that fell from her pocket. However, after the State argued that it might be necessary to refer to the evidence of the other cocaine in order to tell a complete story of what happened, the court stated, “I suppose we’ll have to see how it unravels.”
 

 ¶ 7. Brown was found guilty after a jury' trial on April 9, 2008. The following day, a hearing was held on Brown’s habitual offender status. The court found that Brown had adequate notice of the change to the indictment and that the elements of section 99-19-83 were met; therefore, Brown was sentenced to life imprisonment in the custody of the MDOC without eligibility for parole or probation. On April 17, 2008, Brown’s trial counsel filed a motion for a judgment of acquittal notwithstanding the verdict or, alternatively, for a new trial. The court denied the motion on April 30, 2008.
 
 [4]
 
 Brown, represented by different counsel, now appeals her conviction and sentence.
 

 I. Whether the indictment was insufficient to notify Brown of the nature of the charge.
 

 ¶ 8. Brown claims that, as the indictment failed to distinguish between the cocaine attributable to Brown and the cocaine attributable to Holesome, it was insufficient to notify Brown of the charge against her. “The sufficiency of an indictment is a question of law that affords this Court a broad standard of review.”
 
 Gordon v. State,
 
 977 So.2d 420, 429(¶ 24) (Miss.Ct.App.2008) (citing
 
 Steen v. State,
 
 873 So.2d 155, 161(¶ 21) (Miss.Ct.App.2004)). The primary purpose of an indictment “is to inform the defendant of the charges against him so as to allow him to prepare an adequate defense.”
 
 Id.
 
 (citing
 
 Evans v. State,
 
 916 So.2d 550, 551(¶ 5) (Miss.Ct.App.2005)).
 

 ¶ 9. However, Brown never objected to the form of the indictment prior to or during trial. “All objections to an indictment for a defect appearing on the face thereof, shall be taken by demurrer to the indictment, and not otherwise, before the issuance of the venire facias in capital cases, and before the jury shall be impaneled in all other cases, and not afterward....” Miss.Code Ann. §99-7-21 (Rev.2007). “Further, the Mississippi Supreme Court has held that where a deficiency appearing in an indictment is non-jurisdictional, it may not be raised for the first time on direct appeal ‘absent a showing of cause and actual prejudice.’ ”
 
 Baker v. State,
 
 930 So.2d 399, 404-05(¶ 9) (Miss.Ct.App.2005) (quoting
 
 Brooks v. State,
 
 573 So.2d 1350, 1353 (Miss.1990)). As we noted in
 
 Baker,
 
 “[o]ur courts have identified
 
 *1210
 
 two instances where deficiencies are deemed jurisdictional: where ‘the indictment fails to charge a necessary element of a crime,’ and where ‘there exists no subject matter jurisdiction.’ ”
 
 Id.
 
 (quoting
 
 Banana v. State,
 
 635 So.2d 851, 853 (Miss.1994)). In the case before us, Brown has neither alleged jurisdictional defect in the indictment, nor has she identified any “actual prejudice” has suffered as a result of any non-jurisdictional defect.
 
 [5]
 
 Accordingly, her claim may not be raised for the first time in this appeal.
 

 II. Whether Brown’s trial was fundamentally unfair and a violation of her Fourteenth Amendment right to Due Process based upon the prosecutor’s misconduct in presenting inadmissible and prejudicial evidence.
 

 ¶ 10. Brown alleges that prose-cutorial misconduct resulted in her receiving prejudicial and unfair treatment at trial. When presented with an allegation of prosecutorial misconduct, this Court will only reverse if such conduct “endangers the fairness of a trial and the impartial administration of justice[.]”
 
 Jackson v. State,
 
 1 So.3d 921, 928(¶ 19) (Miss.Ct.App.2008) (quoting
 
 Goodin v. State,
 
 787 So.2d 639, 653(¶ 41) (Miss.2001)). Although defense counsel in this case never made a motion for mistrial, if there is an error in trial proceedings which results “in substantial and irreparable prejudice to the defendant’s case[,]” the circuit court must declare a mistrial.
 
 Smith v. State,
 
 989 So.2d 973, 985(¶ 46) (Miss.Ct.App.2008) (quoting
 
 Parks v. State,
 
 930 So.2d 383, 386(¶ 8) (Miss.2006)). “[T]he [circuit court] judge is permitted considerable discretion in determining whether a mistrial is warranted because the judge is best positioned to measure the prejudicial effect.”
 
 Id.
 
 Therefore, we will examine this issue to determine whether the prosecution’s alleged misconduct was such that the circuit court abused its discretion in not declaring a mistrial sua sponte.
 

 A. Evidence Referring to a Sexual Relationship Between Brown and Holesome
 

 ¶ 11. Brown submits that the prosecution’s persistent allusions to a sexual relationship between Brown and Holesome prejudiced her trial. In questioning Officer Rodgers on direct examination, the State asked: “[A]re you aware of a past sexual relationship between Ms. Brown and [Holesome]?” The court sustained Brown’s objection to this testimony and instructed the jury to disregard the question. Later, the State asked Agent Doss: “What is the relationship between these two people, between Julius Holesome and Patty Brown?” The circuit court again sustained the defense’s objection. Still later, in its cross-examination of Brown, the State once again asked: “How old were you when your sexual relationship with [Holesome] started?” Defense counsel’s objection was sustained.
 

 ¶ 12. The State argues on appeal that this line of questioning was to counter Brown’s story that she went to Pegues’s home merely to help Holesome and Melanie reconcile. We find this explanation questionable as Brown had not yet testi
 
 *1211
 
 fied. Further, it does not explain the State’s repeated questioning on the subject after the defense’s objections had been sustained.
 
 [6]
 

 ¶ 13. To support her argument that reversal is required, Brown cites
 
 Sumrall v. State,
 
 272 So.2d 917, 919 (Miss.1973), in which the Mississippi Supreme Court stated that “the repeated interjection of [a] prejudicial matter” which showed the defendant to be guilty of other crimes and immoral, “destroyed the possibility of a fair trial ... notwithstanding the court’s admonitions.”
 
 Sumrall
 
 involved several instances ' of the prosecution inquiring about other criminal activity, along with two references to the fact that the defendant had an immoral living arrangement with a fifteen-year-old girl. The supreme court held that “vigorous prosecution does not require, and fairness does not permit, that one charged with an offense in this area shall be loaded with prejudicial irrelevances.”
 
 Id.
 
 Further, if the prosecution’s misconduct is intensified by the continual reference to the same subject matter, even after hearing “the court’s admonishment to the jury on a prior occasion ..., the prejudicial effect on the jury is sometimes so great that we have no alternative but to reverse the conviction and sentence and remand the case for a new trial.”
 
 Henderson v. State,
 
 403 So.2d 139, 141 (Miss.1981).
 
 See also Hughes v. State,
 
 470 So.2d 1046, 1048 (Miss.1985) (the prosecution’s inquiry whether the defendant was “living with a woman” and whether he possessed “homegrown” marijuana was reversible error);
 
 Smith v. State,
 
 457 So.2d 327, 336 (Miss.1984) (if a prosecutor denies a defendant his “right to a fair and impartial trial” by the introduction of “irrelevant, inflammatory and prejudicial evidence,” then we may reverse and remand for a new trial).
 

 ¶ 14. In the instant ease, the judge did sustain Brown’s objections and instructed the jury to disregard the question. Further, the judge instructed the jury not to “speculate as to possible answers to questions” that the court disallowed, nor to “draw [any] inference from the content of the questions.” “It is well settled that when the [circuit] judge sustains an objection to testimony and directs the jury to disregard it, prejudicial error does not result.”
 
 Pittman v. State,
 
 928 So.2d 244, 250(¶ 12) (Miss.Ct.App.2006) (quoting
 
 Estes v. State,
 
 533 So.2d 437, 439 (Miss.1988)). It is only “when a procedural error results in substantial and irreparable prejudice to the accused” that a mistrial should be declared by the judge.
 
 Id.
 
 at 249(¶ 11). In
 
 Flora v. State,
 
 925 So.2d 797, 808-09 (¶¶ 26-30) (Miss.2006), the supreme court held that, although the prosecution asked several improper questions, which were objected to by defense counsel and sustained by the judge, it did not constitute reversible error. As in
 
 Flora,
 
 although the State subjected three witnesses — Rodgers, Doss, and Brown — to improper questioning, the court properly instructed the jury to disregard the evidence. When a jury is instructed by the court to disregard a statement, “it is presumed that the jury will follow the court’s instructions.”
 
 Williams v. State,
 
 937 So.2d 35, 41(¶ 16) (Miss.Ct.App.2006) (citation omitted). In this case, defense counsel made no re
 
 *1212
 
 quest for a mistrial, indicating that he did not believe that the questioning had resulted in irreparable prejudice to Brown. Having reviewed the record as a whole, we cannot find that these particular questions by the prosecution established a level of prejudice which would have merited granting a mistrial.
 

 ¶ 15. Brown further claims that this line of questioning regarding a sexual relationship was also prejudicial as it highlighted the racial diversity between herself and Holesome; Brown is a Caucasian female, and Holesome is an African American male. She contends that the prosecution purposely introduced photographic evidence of Brown and Holesome to let the jury know that Brown was white and Holesome was black and that this prejudiced the jury. However, there was no objection by defense counsel to the photographs introduced by the State. A defendant’s failure to object to admission of evidence at trial waives his ability to appeal the issue.
 
 Starr v. State,
 
 997 So.2d 262, 266(¶ 10) (Miss.Ct.App.2008). Prior to the prosecution’s introduction of this evidence, defense counsel had already submitted into evidence a photograph of Brown and Holesome together on the porch, which would have also alerted the jury to the racial difference between Brown and Holesome. Consequently, we find that Brown waived any claim of prejudice in this regard.
 

 B. Evidence that Holesome Pleaded Guilty
 

 ¶ 16. Brown also argues that the prosecution’s references to the fact that Holesome had pleaded guilty rendered her trial fundamentally unfair. Brown’s appellate counsel acknowledges that there was no objection to this testimony at trial. The “[f]ailure by defense counsel to contemporaneously object to a prosecutor’s remark at trial bars consideration of prosecutorial misconduct allegations on appeal.”
 
 Brown v. State,
 
 936 So.2d 447, 458(¶ 16) (Miss.Ct.App.2006) (quoting
 
 Davis v. State,
 
 660 So.2d 1228, 1255 (Miss.1995)).
 

 ¶ 17. However, Brown claims that this Court should review this issue under the plain error doctrine. If an error at trial affects the substantial rights of a party, resulting in a “manifest miscarriage of justice,” then the plain-error doctrine is implicated.
 
 Clark v. State,
 
 14 So.3d 779, 782(¶ 7) (Miss.Ct.App.2009) (citation omitted). Thus, it “should only be used for ‘correcting obvious instances of injustice or misapplied law.’ ”
 
 Starr,
 
 997 So.2d at 267(¶ 12) (citing
 
 Smith v. State,
 
 986 So.2d 290, 294(¶ 10) (Miss.2008)).
 

 ¶ 18. In her brief, Brown correctly observes that a co-defendant’s testimony, that he pleaded guilty to the crime, is generally inadmissible and constitutes reversible error.
 
 Buckley v. State,
 
 223 So.2d 524, 528 (Miss.1969). In a more recent case,
 
 White v. State,
 
 616 So.2d 304, 309 (Miss.1993), the Mississippi Supreme Court upheld this finding, stating that “[t]he fact of a plea of guilty by a co-indictee is not generally admissible in evidence against another co-indictee.” Nevertheless, the supreme court clarified that, in cases where “the issue of the witnesses] guilt is based on conduct not involving the defendant and not at issue in the trial where the witness testifies, the reason for the prohibition loses its force.”
 
 Id.
 
 at 307. Here, although the conduct and circumstances surrounding the charges brought against Brown and Holesome were similar in nature, Holesome was convicted of possession of different parcels of cocaine that were found inside the residence. The conduct at issue in this trial centered around the cocaine that fell from Brown’s pocket, not the cocaine inside the house. There
 
 *1213
 
 fore, the reason for the prohibition loses some of its force in the case before us.
 

 ¶ 19. Further, upon our review of the record, we note that it was only after defense counsel asked Officer Rodgers on cross-examination whether he had asked Holesome “to change his statement and put any of the illegal drugs on Ms. Brown,” that the State brought into evidence Holesome’s guilty plea. In its redirect examination of Officer Rodgers, the State asked:
 

 Q. This last business you were just asked about, have you been to Julius Holesome to ask him to change his statement to implicate Patty Brown. Have you done that?
 

 A. No, sir.
 

 Q. Okay. Now it’s been asked about on cross-examination now so I guess we have to deal with it. Julius Holesome, in fact, pled guilty to his role in all this, did he not?
 

 A. That’s correct.
 

 Defense counsel continued to discuss the issue of Holesome’s guilt by asking, in its cross-examination of Agent Doss, if Hole-some had claimed responsibility for the drugs in the house. Lastly, defense counsel stated during an objection on other grounds: “The question was whether or not he claimed it. And he’s pled guilty to that fact, Your Honor.”
 

 ¶ 20. We can only infer from counsel’s questioning that the decision to raise Holesome’s prior statements, and not to object to the evidence of his guilty plea, constituted trial strategy. An attorney’s decision to “call certain witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy.”
 
 Smith v. State,
 
 989 So.2d 973, 981(¶ 24) (Miss.Ct.App.2008) (citation omitted). Unless an attorney’s actions at trial are “so ill chosen that it permeates the entire trial with obvious unfairness[,]” they are presumed to be strategic in nature.
 
 Id.
 
 Consequently, we do not find that the admission of Holesome’s guilty plea constitutes plain error; this issue is without merit.
 

 C. Evidence of Other Cocaine.
 

 ¶ 21. Finally, Brown claims that the introduction of the evidence of crack cocaine found inside Pegues’s house was error. To support this argument, she cites the circuit court’s statement at the suppression hearing, in which the judge said that the crack found inside the house was not attributable to Brown and that there was “no reason for there to be any evidence of other crack cocaine not connected to or attributed to her in any way.” However, when the State further reasoned that the evidence might be necessary to tell the story of what happened, the circuit court judge said, “I suppose we’ll have to see how it unravels.” The judge then denied Brown’s motion to suppress the evidence logs and lab reports, which contained evidence of the other cocaine. Therefore, we must disagree with Brown’s assertion that the circuit court judge unequivocally barred that evidence from being introduced at trial.
 

 ¶ 22. While the State was the first to mention, in its opening statement, that drugs were found in the residence and “claimed by Mr. Holesome,” defense counsel was the first to alert the jury to the fact that they would “see other pictures inside the house that [the State is] going to call crack cocaine.” When the defense later objected to testimony regarding drug paraphernalia found in the house, a bench conference was held off the record. The circuit court thereafter overruled the objection. We can only surmise that the State reiterated its contention that evidence of the other drugs found inside the house was necessary to tell the jury a
 
 *1214
 
 complete story of the events of January 5, 2007.
 
 See Bell v. State,
 
 963 So.2d 1124, 1131(¶ 16) (Miss.2007) (evidence or testimony suggestive of other crimes may be admissible if it is “substantially necessary to present to the jury ‘the complete story of the crime’ ”). Having reviewed the record in detail, we find no error in the circuit court’s decision to allow the evidence.
 

 ¶ 23. Further, the circuit court judge clearly instructed the jury that the only drug evidence that was in question is that which the State alleged fell from Brown’s pocket, the single rock of crack cocaine. He admonished the jury that all other items discussed might only be considered in weighing the credibility of the testimony and evidence. Thus, we find no error in the introduction of the evidence of cocaine in the house and no prejudice to Brown from the introduction of this evidence at trial. This issue is without merit.
 

 III. Whether Brown’s sentence was harsher than Holesome’s sentence based solely on her refusal to plead guilty, thus violating her due process rights under the Fourteenth Amendment to the United States Constitution.
 

 ¶ 24. Brown contends that the amendment to the indictment which subjected her sentence to the section 99-19-83 enhancement was due to her decision to go forward with a jury trial instead of pleading guilty. In support of this position, she argues that Holesome received a significant reduction in his sentence based upon his guilty plea and that she was unfairly penalized due to her election to trial by jury, which was a clear violation of her constitutional rights.
 

 ¶ 25. Brown cites
 
 MeGilvery v. State,
 
 497 So.2d 67, 69 (Miss.1986), for the proposition that a circuit court’s imposition of a harsher sentence as punishment for a defendant’s insistence on a jury trial imper-missibly infringes on a defendant’s Sixth Amendment right to trial by jury. In that case, Sherman MeGilvery insisted upon a jury trial and was sentenced to forty-five years in custody. However, his co-defendant Fitzgerald Tanner, who pleaded guilty for the same crime, was sentenced to twenty-five years. The supreme court remanded the case to the circuit court for an opportunity to provide a reasoned explanation for the disparity in the two sentences. The court noted that, should no appropriate reason be given, then McGil-very’s sentence should be reduced.
 
 Id.
 

 ¶26.
 
 MeGilvery,
 
 however, is not precisely on point with the present case. Here, the circuit court had no discretion in its actual sentencing of Brown due to the application of the habitual offender statute.
 
 [7]
 
 Rather, the court’s discretion was in whether to accept the State’s amendment to the original indictment, which it did. “Because a determination of whether an amendment is one of form or one of substance is a question of law, a court’s decision to allow the amendment of an indictment deserves a relatively broad standard of review.”
 
 Lepine v. State,
 
 10 So.3d 927, 934(¶ 11) (Miss.Ct.App.2009) (quoting
 
 Cridiso v. State,
 
 956 So.2d 281, 285(¶ 8) (Miss.Ct.App.2006)). A circuit court judge may amend an indictment “in order to charge a defendant as a habitual offender because it
 
 *1215
 
 does not affect the substance of the charged crime, but only the subsequent sentencing.”
 
 Commodore v. State,
 
 994 So.2d 864, 875(¶ 29) (Miss.Ct.App.2008) (citing
 
 Adams v. State,
 
 772 So.2d 1010, 1020(¶ 49) (Miss.2000)).
 

 ¶ 27. It is plain from the record that Brown’s prior convictions warranted the imposition of section 99-19-88, which mandated that if Brown was convicted, the circuit court judge must impose a life sentence. The focus is on the inference that the State gave preferential treatment to Holesome solely based upon his willingness to plead guilty. The State’s motion to amend the initial indictment deleted the habitual offender language relating to Holesome, even though, like Brown, he had been previously convicted of several crimes, including a crime of violence. Instead of receiving a mandatory life sentence, Holesome was only sentenced to eight years in the custody of the MDOC, with one year suspended upon his entry of a guilty plea. When convicted under her amended indictment, Brown was sentenced to life imprisonment. Therefore, the question before this Court is whether the circuit court’s grant of the amendment to the indictment, which resulted in a more lenient sentence for Holesome, coupled with the amendment which resulted in mandatory life imprisonment for Brown, violated Brown’s constitutional rights.
 

 ¶ 28. A defendant charged with a “serious offense,” one for which he could be sentenced to more than six months in custody, is guaranteed the right to a jury trial under the United States Constitution.
 
 Ude v. State,
 
 992 So.2d 1213, 1217(¶ 15) (Miss.Ct.App.2008) (citation omitted). A defendant, however, does not have a “constitutional right to a plea bargain.”
 
 Moody v. State,
 
 716 So.2d 562, 565(¶ 9) (Miss.1998) (citing
 
 Allman v. State,
 
 571 So.2d 244, 254 (Miss.1990)). The United States Court of Appeals for the Fifth Circuit has recognized that a prosecutor’s decision to enter into to plea bargains with some defendants and not with others, is not subject to constitutional scrutiny, “[a]bsent a showing of vindictiveness or use of an arbitrary standard[.]”
 
 Russell v. Collins,
 
 998 F.2d 1287, 1294 (5th Cir.1993). In
 
 Stevenson v. State,
 
 325 So.2d 113, 115-16 (Miss.1975), the Mississippi Supreme Court not only found it “obvious ... that the discretion of a prosecutor and his power to plea bargain is constitutionally permissible[,]” but also opined that without such “prosecutorial discretion and plea bargaining, our system of justice could not function.”
 

 ¶ 29. In
 
 United States v. Rodriguez,
 
 162 F.3d 135 (1st Cir.1998), the government charged six defendants with engaging in the same conspiracy to distribute crack cocaine. Plea agreements with three of the defendants attributed to them an amount of drugs no greater than the amount for which each of the pleading defendants had personally handled. Those who did not plea had attributed to them all of the drugs distributed by the entire conspiracy. The defendants who chose to go to trial, therefore, were sentenced on the basis of a far greater quantity of drugs than those who had pleaded guilty. Two of the convicted defendants claimed that the disparity in sentencing constituted an impermissible burden of their Sixth Amendment right to trial by jury and violated the Due Process and Equal Protection Clauses of the United States Constitution. The United States Court of Appeals for the First Circuit held that:
 

 The fact that those who plead generally receive more lenient treatment, or at least a government recommendation of more lenient treatment than co-defendants who go to trial, does not in and of itself constitute an unconstitutional bur
 
 *1216
 
 den on one’s right to go to trial and prove its case.
 

 162 F.3d at 152. The court found guidance from
 
 Corbitt v. New Jersey,
 
 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978), wherein the United States Supreme Court had rejected a claim that, because a plea of nolo contendere might produce a lesser sentence than going to trial (which could result in mandatory life imprisonment), the New Jersey statutes imposed an unconstitutional burden on the defendant’s right to trial by jury.
 
 Rodriguez,
 
 162 F.3d at 152 (citing
 
 Corbitt,
 
 439 U.S. at 214-15, 218, 99 S.Ct. 492). The Court explained that:
 

 While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant’s assertion of his trial rights, the imposition of these difficult choices is an inevitable — and permissible — attribute of any legitimate system which tolerates and encourages the negotiation of pleas. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor’s interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.
 

 Id.
 
 (quoting
 
 Corbitt,
 
 439 U.S. at 220-21, 99 S.Ct. 492). The
 
 Rodriguez
 
 Court, thus, concluded that while the sentencing differential which resulted from the plea process at issue “exacts a high price from those who exercise their constitutional right to trial[,] ... the price is not high enough to constitute a constitutional violation.”
 
 Id.
 
 It is only “when a prosecutor discriminates against defendants based on impermissible criteria such as race or religion is a prosecutor’s discretion subject to review and rebuke.”
 
 Id.
 
 at 153.
 

 ¶ 30. In
 
 Hersick v. State,
 
 904 So.2d 116 (Miss.2004), our supreme court was presented with an analogous situation. Prior to trial, the defendant had been offered a plea bargain by the State, which offered to recommend a sentence of ten years, with five years suspended.
 
 Id.
 
 at 127(¶ 46). The defendant rejected the offer and exercised his right to trial by jury. Upon his conviction, the State recommended the maximum sentence of ten years, which the court imposed. On appeal, the defendant contended that the imposition of a heavier sentence than was offered to him pretrial was a direct result of his exercise of his constitutional right to jury trial. The State responded that, rather than being punished for going to trial, the defendant had been offered an opportunity to help himself by pleading guilty and accepting responsibility for his crime, which he had refused.
 
 Id.
 
 at 128(¶ 48). The Mississippi Supreme Court held that:
 

 Whether the defendant takes responsibility for his or her actions is a fair consideration for the trial court in sentencing. We find nothing in the record that demonstrates the trial court imposed the maximum sentence to punish [the defendant] for exercising his right to a jury trial.
 

 Id.
 

 ¶ 31. In the instant case, there is no dispute Brown and Holesome had similar criminal backgrounds, yet the amendments to the indictment rendered their sentences significantly disparate. The timing of the amendments to the indictment, occurring on the very day that Holesome entered his guilty plea, raises a concern of possible vindictiveness of the part of the State. However, the State clearly explained at Brown’s sentencing hearing that the prior felony conviction for armed robbery, which triggered the imposition of section 99-19-83 to the indictment, was not known to the State when Brown was originally charged. Brown has not presented any evidence to
 
 *1217
 
 show that the State knew of her conviction for a violent felony at the time of the original indictment. Consequently, we find nothing in the record to indicate that the State’s actions were based on any vindictive motive or were an attempt to punish Brown for electing a trial by jury.
 

 ¶ 32. As such, we do not find that the disparity in Holesome’s and Brown’s sentencing, which was based upon the State’s amendment to the indictment, violated Brown’s constitutional right to trial by jury-
 

 IY. Whether Brown’s sentence was grossly disproportionate and a violation of the Eighth Amendment to the United States Constitution.
 

 ¶ 33. Brown admits in her brief that her sentence is “within the bounds established by the [L]egislature”; however, she argues that her sentence of life imprisonment is “grossly and manifestly disproportionate” to her crime of possession of cocaine.
 

 ¶ 34. In the original indictment, Brown was charged as a habitual offender under section 99-19-81, which states:
 

 Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
 

 The indictment correctly noted that Brown had pleaded guilty to two prior felonies: aiding and assisting in Holesome’s escape from jail and forgery, both of which carried sentences of more than one year in custody. Therefore, Brown was eligible for habitual offender status under this section.
 

 ¶ 35. However, upon further investigation, the State became aware that Brown had other prior convictions. Of special notice was an armed robbery conviction in Lee County, Mississippi in 1988. As this felony was a crime of violence, Brown was eligible for habitual offender status under section 99-19-83, which states:
 

 Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where
 
 any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment,
 
 and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
 

 (Emphasis added). The circuit court judge, at the sentencing hearing, correctly noted that, although Brown’s sentence for armed robbery was reduced because she did not possess an actual weapon, she was still convicted of armed robbery, which is considered a crime of violence. Further, the MDOC computation sheet that was introduced into evidence at the hearing showed that Brown had been in custody for another forgery charge, apart from the one listed in the indictment, and had violated her parole on more than one occasion. It also showed that Brown had pleaded guilty to burglary of a dwelling, for which she was sentenced to ten years,
 
 *1218
 
 to run concurrent with her sentence for robbery.
 

 ¶ 86. “The general rule is that a sentence cannot be disturbed on appeal if the sentence does not exceed the maximum term allowed by statute.”
 
 Rogers v. State,
 
 891 So.2d 268, 271(¶10) (Miss.Ct.App.2004) (citing
 
 Fleming v. State,
 
 604 So.2d 280, 302 (Miss.1992)). In determining whether a sentence is proportional to the offense, this Court considered the three factors set forth in
 
 Solem,
 
 which are: “(1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions.”
 
 Willis v. State,
 
 911 So.2d 947, 951(1117) (Miss.2005). However, we will only apply the
 
 Solem
 
 factors “when a threshold comparison of the crime committed to the sentence imposed leads to an inference of ‘gross disproportionality’.”
 
 Wilkerson v. State,
 
 731 So.2d 1173, 1183(¶ 38) (Miss.1999) (citation omitted). In the context of an enhanced sentence under the habitual offender statute, “[t]he correct proportionality analysis ... does not consider the present offense alone, but within the habitual offender statute.”
 
 Oby v. State,
 
 827 So.2d 731, 735(¶ 12) (Miss.Ct.App.2002) (citing
 
 Bell v. State,
 
 769 So.2d 247, 251 (¶ 9) (Miss.Ct.App.2000)). Therefore, in our review, we must not only consider Brown’s current offense but also her past offenses as well.
 

 ¶ 37. In
 
 Clowers,
 
 the Mississippi Supreme Court approved a judge’s reduced sentence for a habitual offender, even though it was below the sentence mandated by statute, as the judge found the statutory maximum to be disproportionate.
 
 Clowers,
 
 522 So.2d at 765. However, our supreme court clearly pointed out that the holding “should not be taken to intimate that reduced sentences for habitual offenders might become the rule.”
 
 [8]
 

 Id.
 
 Rather, “outside the context of capital punishment, successful challenges to the proportionality of a particular sentence will be exceedingly rare.”
 
 Id.
 
 (quoting
 
 Solem,
 
 463 U.S. at 289-90, 103 S.Ct. 3001). Substantial deference should be given to the Legislature in the context of this issue, “and, thus, extended analysis will rarely be necessary.”
 
 Id.
 
 (citing
 
 Solem,
 
 463 U.S. at 290, 103 S.Ct. 3001).
 

 ¶ 38. Brown’s sentence was not based merely upon her conviction of possession of cocaine. As the circuit court judge succinctly stated: “And so that you will understand, it is not this particular act, that is, possession of a controlled substance, which results in this sentence. It is predicated on all of the other things as defined in the amendment to the indictment; thereby qualifying this defendant under this enhancement statute.” Evidence presented at the sentencing hearing showed Brown had a significant history of criminal behavior. The circuit court judge gave appropriate consideration to Brown’s argument that her sentence was unduly harsh and disproportionate. However, he concluded that her sentence of life imprisonment without eligibility for parole or probation was “not disproportionate because it is in view of the fact that [Brown] has a qualifying number of prior felonies, one of which was armed robbery.” He also noted that Brown had “eight or more felony charges.”
 

 ¶ 39. We find that Brown’s sentence conforms to the requirements of the habitual offender statute, and the circuit court
 
 *1219
 
 thoroughly considered Brown’s sentence in light of the facts and her previous criminal history. Accordingly, we cannot conclude that Brown received a grossly disproportionate sentence and, thus, do not find that any further proportionality review under
 
 Solem
 
 is warranted. This issue is without merit.
 

 ¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF PONTOTOC COUNTY OF CONVICTION OF POSSESSION OF COCAINE, A SCHEDULE II CONTROLLED SUBSTANCE, AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.
 

 [1]
 

 . The convictions referred to in the indictment were a 1981 conviction for aiding and assisting Holesome in escaping from prison, for which Brown was sentenced to five years, and a 1988 conviction for forgery, for which she was sentenced to ten years.
 

 [2]
 

 . On February 26, 1988, Brown was found guilty by a Lee County Circuit Court jury of armed robbery and sentenced to thirty years in the custody of the MDOC; the sentence was later reduced to twenty years' imprisonment.
 

 [3]
 

 . See Miss.Code Ann. § 99-19-83.
 

 [4]
 

 . Brown also filed a pro se motion for a judgment notwithstanding the verdict or, alternatively, for a new trial on April 21, 2008. While the judge’s order denying the defendant’s motion for a judgment of acquittal does not specifically refer to the pro se motion, we find that the order, entered after both motions had been filed, is sufficient to deny both and to provide this Court jurisdiction under Mississippi Rule of Appellate Procedure 4(e).
 

 [5]
 

 . Although Brown alleges that she was "misinformed of the fundamental nature of the charge,” she does not identify any actual prejudice suffered by her defense due to the alleged insufficiency in the indictment. For example, she does not list any witnesses she would have subpoenaed or other evidence she would have presented. Further, the judge noted, in denying Brown’s motions in limine the day prior to trial, that the only cocaine attributable to Brown was the cocaine that fell from her pocket. He also instructed the jury to this effect.
 

 [6]
 

 . While the State could have pursued this line of questioning to raise an inference of bias on the part of Holesome if he took the stand, it could not do so until he was called as a witness.
 
 See
 
 M.R.E. 616 ("evidence of bias, prejudice, or interest of the witness for against any party to the case is admissible[J” if done for the purpose of attacking the witness's credibility.) However, as Holesome never testified, the only purpose of such questioning appears to have been to assail Brown's moral character.
 

 [7]
 

 . Notwithstanding the mandatory sentencing guidelines of the Mississippi habitual offender statutes, the Mississippi Supreme Court has held that “the trial court has authority to review a particular sentence in light of constitutional principles of proportionality as expressed in
 
 Solem v. Helm[,]
 
 [463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)].”
 
 Clowers v. State, 522
 
 So.2d 762, 765 (Miss.1988) (citing the Supremacy Clause, U.S. Const. Art. VI, cl. 2). The constitutionality of Brown’s sentence will be addressed in the next issue.
 

 [8]
 

 . The supreme court later noted in
 
 Barnwell v. State,
 
 567 So.2d 215, 221 (Miss.1990),
 
 “Clowers,
 
 by its own statement, is limited to its own distinctive facts and procedural posture.”