CARLTON, J„
for the Court:
¶ 1. A jury before the Rankin County Circuit Court convicted James Christopher Skinner of disorderly conduct, and the court sentenced him to six months in the Rankin County Jail. Skinner also was convicted of felony evasion and sentenced as a habitual offender to life in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for parole or probation.
¶ 2. Skinner now appeals, raising the following assignments of error: whether (1) the circuit court erred in using his 1994 felony convictions in Florida to qualify him as a violent habitual offender under Mississippi Code Annotated section 99-19-83 (Rev.2007), since he was only fifteen years old at the time of those convictions and was sentenced as a “youthful offender” under the Florida Youthful Offender Act; (2) the circuit court imposed sentences disproportionate to the crimes for which the jury convicted him; and (3) whether the verdict for felony evasion is against the overwhelming weight of the evidence. Finding no error, we affirm.
FACTS
¶ 3. Around 2:00 a.m. on August 28, 2009, the Brandon Police Department set up a safety checkpoint just off of exit 54 of Interstate 20. During this safety check, a red SUV approached the area. Officer Chad McClain, a patrolman with the Brandon Police Department, signaled for the driver to pull up to where he was checking drivers for a valid driver’s license and proof of insurance. Skinner, the driver of the red SUV, pulled the vehicle up near the officer. Officer McClain asked Skinner for his license and proof of insurance. *421 Skinner explained that he did not have his license with him. Officer McClain asked Skinner to drive the vehicle up and park behind another SUV that Officer Josh Arnold, also with the Brandon Police Department, had stopped. Skinner complied.
¶4. Thereafter, Officer McClain again approached Skinner’s vehicle and requested a form of picture identification. Skinner denied having any picture identification, and Officer McClain asked him to step out of the vehicle. When Skinner asked him “why,” Officer McClain replied: “because I asked you to.” Skinner explained that he recently had fallen off a ladder at work and had broken some ribs, so he lacked to the ability to get out of his vehicle. Officer McClain opened the driver’s door and asked Skinner where he had been that night, to which Skinner replied that he had gone to pick someone up from Club Zodiac. Officer McClain responded that if he could go to a club to pick up a friend, then he could get out of the vehicle. Officer McClain again asked Skinner to remove himself from the vehicle. Officer McClain informed Skinner that he could be charged with disorderly conduct and failure to comply if he did not step out of his vehicle.
¶ 5. Officer Arnold overheard the exchange and walked over to Skinner’s location. Officer Arnold explained to Skinner that Officer McClain had given him a lawful order with which he needed to comply or he would be pepper sprayed. Skinner continued to argue and refused to get out of his vehicle. Officer Arnold told Skinner that he had until the count of three to step out of his vehicle or he would pepper spray him, and then he began to count. When Officer Arnold counted to two, Skinner punched Officer Arnold in the chest. As a result, Officer Arnold pepper sprayed him. As Officer Arnold sprayed Skinner, Officer McClain tried to reach into the vehicle to pull Skinner out of the vehicle. As he did, Skinner threw the vehicle in drive and punched the gas. Officer McClain testified that Skinner’s vehicle dragged him for several feet before he freed himself from the vehicle.
¶ 6. As this occurred, Officer Arnold got into his police vehicle and followed Skinner’s vehicle. When Officer McClain freed himself, he also followed Skinner’s vehicle. As Skinner drove on Highway 18, Officer McClain observed a red cooler fly out of the passenger’s window of Skinner’s vehicle. The two officers continued to pursue Skinner’s vehicle at a high rate of speed. Both Officer McClain and Officer Arnold testified that Skinner’s vehicle’s speed at times exceeded 120 miles per hour. Skinner ignored traffic signals and stop signs, and showed a lack of regard for the lines painted on the roadways. At one point, Skinner pulled his vehicle off the road and completed a U-turn. Other law-enforcement agencies were dispatched, and additional officers arrived to aid in the stop of Skinner’s vehicle.
¶ 7. Officer McClain testified that Skinner’s vehicle finally came to a stop after Skinner swerved, causing him to travel airborne off of the roadway and onto some railroad tracks. Officers thereafter approached the vehicle with their weapons drawn. Simeon Hauer, the passenger of Skinner’s vehicle, immediately got out of the vehicle and onto the ground. Officer McClain testified that Skinner continued to struggle and resist, trying to break away from the officers. Several officers from the different law-enforcement agencies worked together to secure Skinner. These officers noticed that Skinner was bleeding and contacted emergency medical personnel.
¶ 8. During this time, the officers noticed Skinner pushing something back toward his buttocks. Officer Arnold testified that *422 when the paramedics arrived, the officers pulled down Skinner’s pants so that the paramedics could remove whatever Skinner had placed in or near his buttocks. Officer Arnold stated that Skinner clenched his buttocks, and the officers assisted the paramedics in the removal of what appeared to be a coffee filter. The coffee filter was later determined to contain less than .1 gram of methamphetamine.
¶ 9. After securing both men, the officers noticed suspicious chemicals in the vehicle and contacted narcotics officers. The officers also located the red cooler previously thrown from the vehicle, which contained items used in the manufacture of methamphetamine.
¶ 10. Hauer, the passenger in Skinner’s vehicle, testified at trial about the events from earlier in the night prior to the chase. Hauer testified that he and Skinner had been at two different houses that night with methamphetamine present. Hauer admitted to using methamphetamine, and he testified that he witnessed Skinner making methamphetamine during the night in question. Skinner denied Hauer’s allegations.
PROCEDURAL HISTORY
¶ 11. A grand jury before the Rankin County Circuit Court indicted Skinner for the following crimes: Count I — simple assault on a law-enforcement officer in violation of Mississippi Code Annotated section 97-3-7 (Supp.2012); Count II — possession of precursor chemicals in violation of Mississippi Code Annotated section 41-29-313 (Rev.2009); Count III — felony evasion in violation of Mississippi Code Annotated section 97-9-72 (Rev.2006); Count IV— manufacture of a controlled substance in violation of Mississippi Code Annotated section 41-29-139 (Supp.2012); Count V— aggravated assault on a law-enforcement officer in violation of Mississippi Code Annotated section 97-3-7; and Count VI— possession of less than .1 gram of methamphetamine in violation of Mississippi Code Annotated section 41-29-139.
¶ 12. On September 9, 2010, the State filed a motion to amend the indictment to charge Skinner as a habitual offender under section 99-19-83, which the circuit court granted at a pretrial hearing on March 17, 2011.[1] The circuit court’s order filed on March 17, 2011, shows that it granted the State’s motion to amend the indictment based on Skinner’s convictions of the following crimes and the resulting sentences: (1) Circuit Court of Rankin County cause number 18714 — possession of a controlled substance and sentence of eight years in the custody of the MDOC, with four years suspended, leaving four years to serve, followed by four years of post-release supervision; (2) Circuit Court of Escambia County, Florida case number 94-5154CFA4M-01 — attempted carjacking with a firearm (Count I) and sentence of four years in the custody of the Florida Department of Corrections (FDOC), followed by two years’ supervised probation; and (3) Circuit Court of Escambia County, Florida case number 94-5154CFA4M-01— aggravated assault with a firearm (Count II) and sentence of four years in the custody of the FDOC, to be served concurrently with the sentence for Count I, followed by one year of supervised probation.
¶ 13. Prior to trial, the State notified the circuit court that it did not intend to proceed on Counts IV (manufacture of a controlled substance) and V (aggravated *423 assault on a law-enforcement officer). A jury trial took place from March 22 to March 25, 2011. At the conclusion of the trial, the jury found Skinner guilty of disorderly conduct, the lesser-included offense of simple assault upon a law-enforcement officer, charged in Count I. As to Count III, the jury found Skinner guilty of felony evasion. The circuit court declared a mistrial with regard to both Count II, possession of precursors, and Count VI, possession of less than .1 gram of methamphetamine, since the jury failed to reach a verdict on those counts.
¶ 14. A sentencing hearing commenced on March 29, 2011. At the sentencing hearing, in support of its request for a life sentence for Skinner based on his habitual status, the State entered into evidence Skinner’s indictment, judgment of conviction, sentence instanter, and pen-pack in Rankin County cause number 18714. In support of the underlying Florida convictions in cause number 94-5154CFA4M-01, the State entered into evidence certified records from the FDOC and the Office of the Clerk of the Escambia County Circuit Court.
¶ 15. After entering evidence substantiating Skinner’s habitual-offender status with the prior offenses, the circuit court sentenced Skinner to six months in the custody of the Rankin County Jail for his conviction of disorderly conduct. As for his crime of felony evasion, the circuit court sentenced Skinner as a habitual offender under section 99-19-88 to life imprisonment in the custody of the MDOC without eligibility for parole or probation. The circuit court ordered that the sentences imposed in Count I and Count III were to run concurrently with each other.
¶ 16. Skinner filed a post-trial motion, which the circuit court denied after holding a hearing. Skinner now appeals.
DISCUSSION
I. Habitual Offender
¶ 17. Skinner alleges that, at the age of fifteen, he pled nolo contendere in Florida for the crimes of attempted carjacking with a firearm and aggravated assault with a firearm. Skinner asserts that the trial court sentenced him as a “youthful offender” under the Florida Youthful Offender Act to four years for each count, with two years of supervised probation, with both sentences to run concurrently. Skinner also claims that he served this time in a youth offenders’ camp. Skinner argues that the circuit court erred by using these convictions to classify him as a violent habitual offender under Mississippi Code Annotated section 99-19-83 in order to sentence him to life imprisonment without the possibility of parole. Skinner asks this Court to reverse his sentence and remand for resentencing under Mississippi Code Annotated section 99-19-81 (Rev.2007), claiming he possesses two qualifying nonviolent prior felony convictions.
¶ 18. The requirements to impose a sentence as a habitual offender are “that the accused be properly indicted as a habitual offender, that the prosecution prove the prior offenses by competent evidence, and that the defendant be given a reasonable opportunity to challenge the prosecution’s proof.” Keyes v. State, 549 So.2d 949, 951 (Miss.1989) (internal citations omitted).
¶ 19. After reviewing the record, we find no merit to Skinner’s assignment of error. Prior to trial, the State filed a motion to amend Skinner’s indictment to charge him as a habitual offender under section 99-19-83, which the circuit court granted. In support of charging Skinner as a habitual offender under section 99-19-83, the State’s motion to amend the indictment cited Skinner’s underlying con *424 victions and sentences: (1) Rankin County, Mississippi cause number 18714 — conviction of possession of a controlled substance and sentence of eight years in the custody of the MDOC, with four years suspended and four years to serve, followed by four years’ post-release supervision; (2) Es-cambia County, Florida case number 94-5154CFA4M-01 — conviction of Count I, attempted carjacking with a firearm, and sentence of four years in the custody of the FDOC, followed by two years of supervised probation; and (3) Escambia County, Florida case number 94-5154CFA4M-01— conviction of Count II, aggravated assault with a firearm, and sentence of four years in the custody of the FDOC, to run concurrently with the sentence in Count I, followed by one year of supervised probation. The record reflects that Skinner served at least a year or more in a penal institution for each underlying conviction, establishing habitual-offender status.[2] The prior convictions sufficiently established his habitual-offender status as charged in the amended indictment, and the circuit court provided Skinner with a fair opportunity to present a defense to the amended indictment charging habitual-offender status.[3]
¶ 20. A review of the plain language of section 99-19-83 shows that this statutory provision does not require that the underlying felony convictions be committed at any certain age but does require separate and distinct felonies with sentences of one year or more imposed. Specifically, section 99-19-83 states:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
¶ 21. Furthermore, we recognize that this Court has previously held that Mississippi’s nonviolent-habitual-offender statute, section 99-19-81,[4] does not require that *425 the underlying felony convictions supporting the habitual-offender status must have been committed at any certain age. See Kelley v. State, 913 So.2d 379, 382 (¶ 4) (Miss.Ct.App.2005) (finding specifically that section 99-19-81 “does not require that underlying felonies have been committed after the age of twenty one”). Similar to section 99-19-81, the violent-habitual-offender statute, section 99-19-83, includes no language requiring that the underlying felonies must have been committed at or above a certain age.
¶ 22. The plain language of section 99-19-83 imposes the maximum punishment for the conviction of a felony if the person convicted possesses two prior distinct felonies, where at least one year was served for each felony in any state or federal penal institution, and one of these felonies is a crime of violence. The record shows that Skinner was sentenced to and served the requisite imprisonment, as previously discussed. The offenses of armed carjacking and aggravated assault both constitute felonies under the laws of the state of the prior conviction, Florida.[5] Further, the record and Mississippi jurisprudence reflect that Skinner’s offenses are crimes of violence.[6] Accordingly, we find that the circuit court in the present case committed no error in relying on Skinner’s previous convictions in determining his status as a habitual offender under section 99-19-83. This issue is without merit.
II. Eighth Amendment
¶23. Skinner claims that his sentence of life without the possibility of parole constitutes cruel and unusual punishment under the Eighth Amendment. He asserts that his sentence is wholly disproportionate to the crimes for which he was convicted: felony evasion, which carries a maximum sentence of five years, and disorderly conduct, which carries a maximum sentence of six months in jail.
¶ 24. Generally, “a sentence that does not exceed the maximum period of time allowed by statute will not be disturbed on appeal.” Cummings v. State, 29 So.3d 859, 861 (¶ 4) (Miss.Ct.App.2010) (citation omitted). In determining whether a sentence is proportional to the offense, this Court eonsider[s] the three factors set forth in Solem,[7] which are:
(1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions.
Brown v. State, 37 So.3d 1205, 1218 (¶ 36) (Miss.Ct.App.2009) (citation omitted and footnote added). However, this Court only applies the Solem factors “when a threshold comparison of the crime committed to the sentence imposed leads to an inference of ‘gross disproportionality.’ ” Id. (citation omitted).
*426 ¶ 25. Skinner’s sentence of life imprisonment complies with the applicable habitual-offender statute, section 99-19-83. “Our supreme court has consistently held that sentences under the habitual-offender statute do not constitute cruel and unusual punishment.” Cummings, 29 So.3d at 861 (¶ 5). The circuit court’s order amending Skinner’s indictment to charge him as a habitual offender under section 99-19-83 listed Skinner’s prior convictions of possession of a controlled substance, attempted carjacking with a firearm, and aggravated assault with a firearm. In light of the gravity of Skinner’s current offense and his prior offenses, the circuit court’s imposition of a life sentence fails to give rise to an Eighth Amendment proportionality analysis. Therefore, this Court will not proceed with such an analysis. Since the record reflects no gross disproportionality in the sentence, and the sentence falls within the statutory-maximum period, we find no abuse of discretion in the sentence imposed by the circuit court. See Cummings v. State, 58 So.3d 715, 719 (¶ 19) (Miss.Ct.App.2011) (“This Court reviews the terms of a sentence under an abuse-of-discretion standard.”).
¶ 26. This issue is without merit.
III. Weight of the Evidence
¶ 27. Skinner argues that his conviction of felony evasion is against the overwhelming weight of the evidence. In support of his claim, Skinner points to the following: he suffers from bipolar disorder and attention deficit hyperactivity disorder; he was not on his medications at the time of arrest; the police profiled him due to his long hair and tattoos; the police demanded he exit his vehicle but failed to make such a demand to another person receiving a ticket at the police checkpoint; and the police threatened to give him a “good a* * whipping” if he failed to exit his vehicle, and he fled in terror. Skinner also claims that when the police pursuit ended, the police kicked, punched, and beat him, causing him to suffer seven broken ribs, a punctured lung, and a broken nose on both sides.
¶ 28. “In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence that supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial.” Cole v. State, 8 So.3d 250, 254 (¶ 16) (Miss.Ct.App.2008) (citation omitted). “This Court will overturn a verdict only when to allow it to stand would sanction an unconscionable injustice.” Id.
¶ 29. A grand jury before the Rankin County Circuit Court indicted Skinner for felony evasion under Mississippi Code Annotated section 97-9-72, which states:
(1) The driver of a motor vehicle who is given a visible or audible signal by a law enforcement officer by hand, voice, emergency light or siren directing the driver to bring his motor vehicle to a stop when such signal is given by a law enforcement officer acting in the lawful performance of duty who has a reasonable suspicion to believe that the driver in question has committed a crime, and who willfully fails to obey such direction shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed One Thousand Dollars ($1,000.00) or imprisoned in the county jail for a term not to exceed six (6) months, or both.
(2) Any person who is guilty of violating subsection (1) of this section by operating a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indiffer *427 ence to the value of human life, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fíne not to exceed Five Thousand Dollars ($5,000.00), or by commitment to the custody of the Mississippi Department of Corrections for not more than five (5) years, or both.
¶ 30. A review of the record shows that ample evidence existed to support the jury’s verdict finding Skinner guilty of felony evasion. The testimony at trial indicated that Skinner led police on a high-speed chase during which speeds exceeded 120 miles per hour. Both Officer McClain and Officer Arnold testified that Skinner ignored traffic devices and stop signs. Officer McClain also testified that Skinner’s vehicle drug him for several feet as Skinner began his attempt to evade the officers. Testimony at trial also showed that Skinner continued to fight and struggle with the officers even after his vehicle finally came to a halt after crashing onto the railroad tracks.
¶ 31. Viewed in the light most favorable to the verdict, we find that Skinner’s driving evidenced a reckless or willful disregard for the safety of others. Consequently, the jury’s verdict finding Skinner guilty of felony evasion is not so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. It follows that we find no merit to this issue.
¶ 32. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, DISORDERLY CONDUCT, AND SENTENCE OF SIX MONTHS IN THE RANKIN COUNTY JAIL; AND COUNT III, FELONY EVASION, AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IMPRISONMENT WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, WITH THE SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., NOT PARTICIPATING.

. At the pretrial hearing, Skinner offered no objection to the State's motion to amend the indictment.

. "[I]n the context of determining habitual[-]offender status, the majority view is that a judgment based on a nolo contendere plea is a conviction.” Bailey v. State, 728 So.2d 1070, 1073 (¶ 13) (Miss.1997).

. Mississippi courts have recognized aggravated assault as a crime of violence. Davis v. State, 680 So.2d 848, 851 (Miss.1996). The Mississippi Supreme Court has also acknowledged that
[fjederal sentencing guidelines further define "crime of violence" as "any offense under federal or state law punishable by imprisonment for a term exceeding one year that ... has as an element the use, attempted use, or threatened use of physical force against the person of another” and include within that definition "murder, manslaughter, kidnap[p]ing, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.”
Davis, 680 So.2d at 851 (quoting United States v. Fry, 51 F.3d 543, 546 (5th Cir.1995)). Carjacking in Mississippi is similarly considered a crime of violence against a person. See Jeffrey Jackson & Mary Miller, Encyclopedia of Mississippi Law § 23:120 (2001); see also Miss.Code Ann. § 97-3-117 (Rev.2006).

.Section 99-19-81 states:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of impris *425 onment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

.We pause to note that Skinner was previously convicted in Florida of the crime of attempted carjacking with a firearm. See Miss.Code Ann. § 97-3-117 ("A person who is convicted of attempted carjacking shall receive the same punishment as the person who is convicted of carjacking ... Any person who is convicted of attempted armed carjacking shall receive the same punishment as the person who is convicted of armed carjacking.”).

. See generally Davis, 680 So.2d at 851; see also Miss.Code Ann. § 97-3-117; Jeffrey Jackson & Mary Miller, Encyclopedia of Mississippi Law § 23:120 (2001).

. Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).